**RHODE ISLAND HOSPITAL TRUST CO. v. PAGE, Former Collector of Internal Revenue.**

**No. 2691.**

District Court, D. Rhode Island.

April 20, 1936.

Hinckley, Allen, Tillinghast & Wheeler and James F. Armstrong, all of Providence, R. I., for plaintiff.

J. Howard McGrath, U. S. Atty., of Providence, R. I., Frank J. Wideman, Asst. Atty. Gen., and Andrew D. Sharpe and S. E. Blackham, Sp. Assts., for defendant.

MAHONEY, District Judge.

This is an action of assumpsit brought by the Rhode Island Hospital Trust Company, executor under the will of Henry Pearce, Jr., deceased, against Frank A. Page, individually, former collector of internal revenue for the United States, Collection District of Rhode Island, in which the plaintiff seeks to obtain a refund of taxes paid by the plaintiff's testate for the year 1928, less an additional tax for 1926, together with interest thereon from the date of the payment of the alleged overassessment less interest on the additional tax for 1926 from the due date thereof.

Henry Pearce, Jr., the plaintiff's testate, carried on for many years with Harriman & Co., stock brokers, a margin account which finally terminated in 1928. In 1923 and 1924 certain securities in that account were sold at a loss of $143,888.50. Twenty-five hundred shares of Corn Products stock were purchased in this account on August 29, 1924, at a cost of $84,687.-50. This stock was sold on September 14, 1928, for $217,912.50. The profit on this transaction was $133,225. It was included in the gross income for 1928 and a tax thereon was paid by the plaintiff's testate. It appears on January 1, 1928, plaintiff's testate had a debit balance with Harriman

& Co. of $218,761.53. The cost of securities in this account on that date amounted to $84,687.50, and plaintiff's testate was indebted to the broker in the amount of $134,074.03 in excess of the cost of securities. This indebtedness arose through the sale of certain securities in 1923 and 1924 at an amount of $143,888.50 less than their cost to plaintiff's testate. Through certain credits this amount was reduced to $134,-074.03 on January 1, 1928, and was paid between January 1, 1928, and September 14, 1928, by various payments including the application of the $133,225 profit on the sale of 2,500 shares of Corn Products stock which had been purchased on August 29, 1924.

This account with Harriman & Co. was a brokerage account during the life of which the plaintiff's testate, at least from 1923 on, was indebted to the broker. At no time did the customer have sufficient money to pay the amount of the claim of his broker against him and gave notes for the amounts due. These were renewed from time to time.

The account of the plaintiff's testate on August 29, 1924, after the purchase of 2,-500 shares of Corn Products stock and the sale of a certain number of shares of Standard Oil stock showed a debit balance of $219,058.42, and from time to time he delivered to the broker certain promissory notes signed by him representing substantially the amount of the debit balance of the account. Further, he assigned to the broker certain collateral securities which included the reversion in a trust agreement. These notes and reversion in the trust agreement were held as collateral security for the margin account. The notes were renewed from time to time. In 1928 the brokers sold the Corn Products stock for $217,912.50, which was used by the broker to liquidate the account. This payment, together with certain cash payments and dividend credits during the year 1928, finally liquidated the account, and thereupon the broker surrendered the notes and other collateral security held against the account. It appears that there was a profit or $133,225 on the sale of the stock in 1928 and the plaintiff's testate included this in his tax return and paid the tax thereon. For the years 1923 and 1924 he included in his returns the sums of $124,-363.50 and $19,525 respectively, as losses resulting from sales during those years. As his losses for those years were in ex-

cess of his income, without the benefit of these deductions, there was no effect on his tax liability for 1923 and 1924 due to these deductions. In 1926 he claimed a deduction under section 206 of the Revenue Act of 1926 (44 Stat. 17), of part of the loss for 1924, as a so-called "net loss." Consequently, his liability for 1926 was understated in the sum of $2,007.58, which amount, together with interest thereon as provided for by law, the plaintiff agrees may be credited against any amount recovered in this action for the year 1928, irrespective of the expiration of the statutory period within which assessments may be made for 1926.

His return for 1928 showed a tax of $18,125.08, which was paid. Subsequently an additional assessment levied thereon was paid by him.

In 1931 he filed a claim for refund of $18,000 on the ground that while the profit of $133,225 on the sale of the Corn Products stock was taxable, yet he sustained a loss in the same year in that amount plus the sum of $4,074.92 paid to balance the brokerage account.

The plaintiff maintains that when the amount of the loss previously charged to his account was paid in 1928, that the losses were then sustained and not in the previous years when they had been charged against his brokerage account by an increase in the debit balance. The claim for refund has been disallowed by the Commissioner of Internal Revenue and the plaintiff has brought this suit in its capacity as executor under the will of its testate. The case is before this court on the motions for judgment of the plaintiff and of the defendant, respectively.

The returns for 1928 and the other years were filed on a cash receipts and disbursements basis.

The question involved in the case is whether the plaintiff's testate, who filed his income tax return on a cash receipts and disbursements basis, is entitled to deduct from the income of its testate losses from the sale of shares of stock in a margin account with a broker in the years 1923 and 1924, in the year 1928, when the profits arising from other sales, together with certain cash payments, were applied in payment of the account existing between the brokers and the plaintiff's testate.

The provisions of the taxing act involved are those of the Revenue Act of 1928.

Section 23 (e) of the Revenue Act of 1928 (26 U.S.C.A. § 23 note) provides as follows:

"Sec. 23. *Deductions from Gross Income.*

"In computing net income there shall be allowed as deductions:

"(e) *Losses by Individuals.* In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

"(1) if incurred in trade or business; or

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or

"(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft."

Section 41 of the Revenue Act of 1928 (26 U.S.C.A. § 41 and note) provides as follows:

"§ 41. *General Rule.*

"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year."

Section 43 of the Revenue Act of 1928 (26 U.S.C.A. § 43 and note) provides as follows:

"§ 43. *Period for which Deductions and Credits Taken.*

"The deductions and credits provided for in this title [chapter] shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred,' dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period."

It is conceded that the taxpayer made his returns and paid income taxes on the cash receipts and disbursements basis. In the years 1923 and 1924, there were sales of shares of stock which may be said to be the identifiable events necessary to establish the losses required by the statute. But was the loss sustained in the taxable years?

It is true the taxpayer did deduct the losses for those years occasioned by the sales, but was he in error? This entire brokerage account was an unusual one. It was greatly undermargined, and the taxpayer, the customer of the broker, was heavily indebted to the broker. During the lifetime of the account, he did from time to time give his notes to the broker, but he did not pay in money. He did not make any expenditures. He was at no time poorer for having made any cash payments. Whatever may be said about closing·the account out at any time prior to 1928, the fact remains that it was not so closed out, and the taxpayer did not pay out any money. There was not a realization of the losses until 1928, when the broker retained the profits on the sales of that year and the customer paid the remaining balance in cash. Until then the actual loss was not sustained. In Shoenberg v. Commissioner of Internal Revenue (C.C.A.) 77 F.(2d) 446, 449, the Court said:

"To secure a deduction, the statute requires that an actual loss be sustained. An actual loss is not sustained unless when the entire transaction is concluded the taxpayer is poorer to the extent of the loss claimed; in other words, he has that much less than before. * * * Taxation is concerned with realities, and no loss is deductible which is not real."

In Weiss v. Wiener, 279 U.S. 333, 49 S.Ct. 337, 73 L.Ed. 720, the court said:

"The income tax laws do not profess to embody perfect economic theory. They ignore some things that either a theorist or a business man would take into account in determining the pecuniary condition of the taxpayer. They do not charge for appreciation of property or allow a loss from a fall in market value unless realized in money by a sale. * * * It is true that they allow for obsolescence of buildings, etc., where the loss is of materials not of money, but there as elsewhere the loss must be actual and present, not merely

contemplated as more or less sure to occur in the future."

In Hart v. Commissioner (C.C.A.) 54 F.(2d) 848, 852, the court stated that:

"It is inconsistent with the cash receipts and disbursement method of accounting that the petitioner be permitted to claim a deduction where there has been no actual payment of cash. This basis of accounting requires that he report only actual receipts and deduct only actual disbursements."

The taxpayer might never have paid in cash. The broker might never have sued for recovery of the amount due. And the Supreme Court said in Lucas v. American Code Company, Inc., 280 U.S. 445, 50 S.Ct. 202, 203, 74 L.Ed. 538, 67 A.L.R. 1010:

"For, even an unquestionable breach does not result in loss, if the injured party forgives or refrains from prosecuting his claim."

And Mr. Justice Holmes said in Eckert v. Burnet, 283 U.S. 140, 51 S.Ct. 373, 374, 75 L.Ed. 911, where the petitioner's tax return was on a cash basis:

"A deduction may be permissible in the taxable year in which the petitioner pays cash. The petitioner says that it was definitely ascertained in 1925 that the petitioner would sustain the losses in question. So it was, if the petitioner ultimately pays his note. So was the tax considered in United States v. Mitchell, 271 U.S. 9, 12, 46 S.Ct. 418, 70 L.Ed. 799, but it could not be deducted until it was paid."

The Supreme Court, in Burnet v. Huff, 288 U.S. 156, 160, 53 S.Ct. 330, 331, 77 L.Ed. 670, said:

"But the mere existence of liability is not enough to establish a deductible loss. There is liability in the case of a breach of contract, but as the Court said in Lucas v. American Code Co., 280 U.S. 445, 450, 50 S.Ct. 202, 203, 74 L.Ed. 538 [67 A.L.R. 1010], 'even an unquestionable breach does not result in loss, if the injured party forgives or refrains from prosecuting his claim.' And whether a taxpayer will actually sustain a loss through embezzlement of trust funds of which he is trustee will depend upon a variety of circumstances. If there is liability on his part for the misappropriation, it does not create a certainty of loss, as the defalcation may be made good by the one who caused it, or the liability of the taxpayer may be enforced only to a limited extent or not at all. The requirement that losses be deducted in the year in which they are sustained calls for a practical test. The loss 'must be actual and present.' Weiss v. Wiener, 279 U.S. 333, 335, 49 S.Ct. 337, 73 L.Ed. 720; Lucas v. American Code Co., supra; Eckert v. Burnet, 283 U.S. 140, 141, 142, 51 S.Ct. 373, 75 L.Ed. 911."

In the instant case, which rests upon the cash receipts and disbursements basis of accounting, where sales of shares of stock were made in a heavily undermargined account resulting in a large indebtedness to the broker, the customer sustained the loss when the certainty of loss was definitely ascertained and when the indebtedness was actually paid. His right to claim the deduction arose when actual payment was made. The payment thus made was an actual disbursement properly deductible in accordance with the method of accounting.

The motion of the defendant for judgment is denied.

The motion of the plaintiff for judgment is granted. Judgment may be entered for the plaintiff in the sum of $14,520.60, with interest as provided by law.