## DANIELS & FISHER STORES CO. v. UNITED STATES.

### No. F–323.

Court of Claims.
March 7, 1932.

This case having been heard by the Court of Claims, the court, upon the evidence adduced, makes the following special findings of fact:

1. The Daniels & Fisher Stores Company, plaintiff herein, is a Colorado corporation organized in the year 1901 to take over a department store business owned by William Cooke Daniels, including all real estate and personal property used in connection therewith. As a consideration for the transfer of the property to the corporation, William Cooke Daniels received 4,995 shares of the new corporation's 5,000 shares of capital stock, each share having a par value of $100. The remaining five shares were used as qualifying directors' shares.

2. As a part of the transaction involving the transfer of the assets of the proprietorship of the corporation, William Cooke Daniels conveyed to the plaintiff the following described real estate, to wit: Lots 10, 11, 12, 13, 14, 15, and 16 in block 76, East Denver; lots 31, 32, 33, and 34 in block 9, Whitsitts addition to Denver; lot 7, block 5, San Rafael addition; lots 1 to 18, inclusive, block 21, Windsor Heights; lots 4 and 5, block 3, Greenwood addition to Argo Park. The conveyance was made by quitclaim deed dated May 8, 1901, and duly recorded in the office of the clerk and recorder in and for the city and county of Denver, Colo. The consideration stated therein was the sum $200,000.

3. The plaintiff's department store is located at the corner of Sixteenth and Lawrence streets in downtown Denver on the property hereinabove described as lots 10 to 16, inclusive, in block 76, East Denver. That property will be hereinafter referred to as the "store property." The plaintiff's barns were located on the property described as lots 31 to 34, inclusive, in block 9, Whitsitts addition to Denver, and hereinafter referred to as the "barn property." Since coming into the possession of those properties, the plaintiff has retained such ownership of them as it obtained through the conveyance of April 8, 1901, and has continuously used them in the operation of its business. The other three parcels of real estate described in finding 2 hereof are hereinafter referred to as "miscellaneous property."

4. At or about the time of the organization of the plaintiff corporation and the conveyance of April 8, 1901, William Cooke Daniels was advised by his counsel, who was likewise general counsel for and secretary of the new corporation, as well as administrator of the estate of William B. Daniels, that he had a good fee title to the store property. The store property, along with the barn property, including the buildings and improvements thereon, were appraised at **or**

478

about the same time at $650,000, and that valuation was recorded in the books of the company. The store property and the barn property were apparently appraised as an entirety. No attempt was made in so far as the record herein discloses to separately appraise and value each of the several lots which comprised the two parcels, or to appraise the values of the real estate separately and apart from the buildings and improvements located thereon, or to segregate their respective values on the books of the proprietorship and the corporation. A value of $1,231.81 was given to the so-called miscellaneous property on the books of the company.

5. The fair market value of lots 10 to 16, inclusive, in block 76, East Denver, on March 1, 1913, was as follows:

Lot 10........................... $31,250
Lot 11........................... 37,500
Lot 12........................... 37,500
Lot 13........................... 52,500
Lot 14........................... 52,500
Lot 15........................... 70,000
Lot 16........................... 175,000

$456,250

6. The fair market value of the improvements on lots 10 to 16, inclusive, in block 76, East Denver, on March 1, 1913, was $374,062. The fair market value on March 1, 1913, of the improvements on lots 13, 14, 15, and 16 in block 76, East Denver, was $256,300.

7. Based upon one-third full value, the assessed value of lots 10 to 16, inclusive, in block 76, East Denver, in the year 1900 was $83,900 and the assessed value in 1900 of each of these lots was as follows:

Lot 10........................... $ 5,700
Lot 11........................... 5,700
Lot 12........................... 5,700
Lot 13........................... 7,800
Lot 14........................... 11,500
Lot 15........................... 17,500
Lot 16........................... 30,000

$83,900

8. The assessed value in the year 1900 of the improvements on lots 10 to 16, inclusive, in block 76, East Denver, based upon one-third of the full value, was $75,000.

9. Based upon one-third of the full value, the assessed value of lots 31 to 34, inclusive, in block 9, Whitsitts addition, in the year 1900, was $1,650.

10. Based upon one-third of the full value the assessed value in the year 1900 of the improvements on lots 31 to 34, inclusive, in block 9, Whitsitts addition, was $1,190.

11. The fair market value of the store property with improvements thereon was, on March 1, 1913, exclusive of any improvements added between May 1, 1901, and March 1, 1913, in excess of the fair market value of the property on the date of its acquisition by the plaintiff. The cost of the property to the plaintiff has not been definitely proved.

12. On or about April 21, 1919, plaintiff filed with the collector of internal revenue for the district of Colorado a consolidated corporation income and profits tax return for the calendar year 1918, said return consolidating the income of the plaintiff corporation and that of the Daniels & Fisher Realty Company, its subsidiary, indicating a total tax liability of $175,336.54.

13. Plaintiff paid to said collector of internal revenue said amount of $175,336.54 as follows:

On March 20, 1919............. $ 43,500.00
On March 25, 1919............. 335.52
On June 18, 1919.............. 43,832.75
On September 16, 1919......... 43,834.13
On December 16, 1919.......... 39,199.29
On September 3, 1920.......... 4,634.85

$175,336.54

14. On or about the 15th day of March, 1920, plaintiff filed with said collector of internal revenue a consolidated corporation income and profits tax return for the calendar year 1919, said return consolidating the income of the plaintiff corporation and that of the Daniels & Fisher Realty Company, its subsidiary, indicating a total tax liability of $122,439.09.

15. Plaintiff paid to said collector of internal revenue said amount of $122,439.09 as follows:

On March 15, 1920............. $ 30,609.77
On March 16, 1920............. 30,609.77
On September 16, 1920......... 30,609.77
On December 16, 1920.......... 30,609.78

$122,439.09

16. On or about the 22d day of November, 1922, plaintiff filed amended returns for the years 1918 and 1919 indicating a total tax liability for each year as follows:
For 1918...................... $102,671.42
For 1919...................... 129,598.26

17. Concurrently with the filing of said amended returns, on or about November 22,

1922, plaintiff filed a claim for refund of taxes in the amount of $93,898.48 covering adjustments contended for by plaintiff for years 1917 to 1921, inclusive. So far as this suit is concerned such claim related only to the year 1918, inasmuch as it was based entirely on amended returns which claimed the right to deduct the losses in the year 1918.

18. On or about the 30th day of April, 1925, the claim of $93,898.48 filed by plaintiff was partially allowed in the amount of $10,572.36, but this allowance was not based upon any ground of refund set up by plaintiff or alleged in this suit. No further part of the claim of $93,898.48 has been allowed.

19. Plaintiff's total tax liability for 1918 was redetermined to be $164,764.18, which amount is less than the tax previously paid by $10,572.36. A certificate of overassessment was issued therefor, and said amount was credited against plaintiff's tax liability for the year 1922.

20. For the year 1919 the Commissioner of Internal Revenue determined and assessed an additional tax in the sum of $5,996.46, making a total tax liability for 1919 of $128,435.55. The additional tax of $5,996.46 was paid to the collector of internal revenue for the district of Colorado on or about June 11, 1925.

21. On or about the 25th day of February, 1926, plaintiff filed a claim for refund of the total amount of income and profits tax paid by the plaintiff for the year 1919, in the sum of $128,435.55. No part of the claim has ever been allowed. In its claim for refund the plaintiff asserted that its application should be allowed for the following reasons:

"There are now pending before the Federal courts and the United States Board of Tax Appeals a number of cases which, if decided against the Commissioner of Internal Revenue, may entitle taxpayers to refunds of part or all of the taxes paid for the period shown.

"In order that this taxpayer may have the advantage of such decisions, this claim for refund is filed for the full amount of the tax paid so as to extend the statutory period for recovery of amounts paid in excess of legal requirements."

22. The Commissioner of Internal Revenue has never allowed any refund to plaintiff based upon its claim that it sustained a loss growing out of the purchase of lots 13 to 16, inclusive, in block 76, East Denver, Colo., and suit to quiet title, and other matters set forth in paragraph 7 of its amended petition.

23. Prior to 1910, William C. Daniels and his wife conveyed to the Daniels & Fisher Stores Company lots 13, 14, 15, and 16, in block 76, East Denver, and in 1910 these four lots were conveyed by plaintiff to its subsidiary, the Daniels & Fisher Realty Company, a corporation. William C. Daniels died March 18, 1918.

24. In the year 1918 one Sarah M. Kenyon notified the Daniels & Fisher Realty Company that she claimed to be entitled to a one-half interest in the lots mentioned in finding 23, acquired through William C. Daniels. After this demand was made, the plaintiff's subsidiary, the Daniels & Fisher Realty Company, began a suit in equity in the District Court of the United States for the First District of Colorado asking a decree quieting title in plaintiff to the said four lots in which Sarah M. Kenyon claimed a one-half interest. To this bill Sarah M. Kenyon filed a cross-complaint claiming to be the owner of an undivided one-half interest therein, and about August 25, 1919, the court entered judgment quieting title in the said Sarah M. Kenyon to a one-quarter interest in lots 13, 14, 15, and 16, in block 76, East Denver. From this judgment no appeal was taken, and in 1920 the sum of $75,000 was paid by plaintiff to Sarah M. Kenyon for her one-quarter interest in said lots, title to which had been quieted in her by decree of the court, and Sarah M. Kenyon and her heirs conveyed said one-quarter interest to the Daniels & Fisher Realty Company.

25. In preparing its original income and profits tax returns for the calendar years 1918 and 1919, which were filed with the collector of internal revenue, plaintiff in computing its taxable net income deducted $25,000 for each of the years 1918 and 1919 on account of alleged loss arising out of the court's decision quieting title in Sarah M. Kenyon to the quarter interest in lots 13, 14, 15, and 16 in block 76, East Denver. In preparing its amended income and profits tax returns for said years, plaintiff deducted an additional $50,000 from net income for the year 1918 and restored the $25,000 to net income for the year 1919. All of the said deductions have been disallowed by the Commissioner of Internal Revenue.

Albert E. Ford, of Chicago, Ill., for plaintiff.

John A. Rees, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

480

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WHALEY, and WILLIAMS, Judges.

GREEN, Judge.

This suit is commenced to recover an overpayment in income and profits tax arising out of a loss alleged to have been sustained by the plaintiff in connection with four city lots in Denver, Colo.

The petition states the cause of action in the alternative, alleging first an overpayment in the taxes of 1918, and next stating that, if it is not entitled to recover for an overpayment in 1918, it is entitled to recover for the year 1919. We do not think the plaintiff is entitled to recover on the basis of an overpayment in either year for several reasons, only part of which will be hereinafter set out.

The evidence shows that in 1901 the plaintiff acquired from William Cooke Daniels a department store business and thirty-two city lots, among which were four lots in relation to which it is alleged the loss was sustained. The value of these lots on March 1, 1913, is shown by the findings, but there is no evidence to show the cost of the store property to the plaintiff or the cost of the four lots which constituted a part thereof. Prior to the year 1910 plaintiff obtained from William Cooke Daniels and wife certain conveyances of the four lots and had reason to believe that it had good title thereto. In 1910 the four lots were conveyed by plaintiff to its subsidiary, the Daniels & Fisher Realty Company.

In the year 1918 one Sarah M. Kenyon notified the Daniels & Fisher Realty Company that for reasons not necessary to be enumerated here she claimed to be entitled to one-half interest in lots Nos. 13, 14, 15, and 16, in block 76, East Denver, being the four lots to which reference has hereinabove been made. Thereafter certain court proceedings were had which resulted in a judgment on August 25, 1919, quieting title in Sarah M. Kenyon to a one-fourth interest in said lots, and in 1920 $75,000 was paid by plaintiff to Sarah M. Kenyon for her one-fourth interest in the four lots, title to which had been quieted in her by the court, and she and her heirs conveyed this property to the Daniels & Fisher Realty Company.

The plaintiff's suit, as before stated, is in the alternative, and is based upon two claims for refund, one filed for the year 1918 and the other for the year 1919. It is insisted on behalf of defendant that the suit is not begun in time on either of these claims, but we do not think it is necessary to pass upon this defense.

Conceding that there was a loss within the meaning of the word as used in the statute, occasioned to the plaintiff, by the facts above set forth, we are quite clear that it was not sustained in 1918, although Sarah M. Kenyon obtained her title thereto in that year as subsequently found by the court through the death of William C. Daniels, but there is nothing in the evidence to show that either plaintiff or the Daniels & Fisher Realty Company admitted in 1918 that she had any interest in the lots. In fact, the last-named company commenced an action in equity against Sarah M. Kenyon to quiet the title thereto against her claims while she on her part filed a cross-petition. The suit, after the usual court proceedings, resulted in a judgment in her favor in 1919. Up to the time of judgment, at least, plaintiff's grantee retained possession of these lots and no loss had been sustained by any one. There was indeed a liability, but its amount had not been determined, and it was contingent upon demands made by Sarah M. Kenyon and enforceable only by an action at law against plaintiff's subsidiary. We think that losses which depend on the result of a contested action in court cannot be said to be definitely fixed prior to the rendition of judgment therein. In Lucas v. American Code Co., 280 U. S. 445, 50 S. Ct. 202, 203, 74 L. Ed. 538, a somewhat similar case, it is said with reference to a loss arising on a breach of contract: "The mere refusal to perform a contract does not justify the deduction, as a loss, of the anticipated damages. For, even an unquestionable breach does not result in loss, if the injured party forgives or refrains from prosecuting his claim. And, when liability is contested, the institution of a suit does not, of itself, create certainty of loss."

In that case, although a reserve was set up on the books to meet the liability, the Supreme Court refused to allow the loss for a year previous to that in which a judgment fixing the amount was rendered.

The claim for refund of part of the taxes for 1919 is merely a request for a refund without stating any amount claimed, or reciting any facts whatever making any statement with reference to the nature of the claim, or using any language to show to what it related. It in no manner complies with the statute, and is entirely insufficient upon which to

base a suit for overpayment of taxes in the year 1919. For this reason we do not need to consider whether the plaintiff sustained any loss in that year.

The considerations stated above make it unnecessary for us to consider the numerous other objections which are made on the part of defendant to the action of plaintiff and the claims upon which it is based.

We conclude that plaintiff's petition should be dismissed, and it is so ordered.