SUFFOLK SECURITIES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86018.   Promulgated May 15, 1940.

*David A. Buckley, Jr., Esq.*, and *Harvey L. Rabbitt, Esq.*, for the petitioner.

*W. Frank Gibbs, Esq.*, for the respondent.

1162

1166

## OPINION.

HILL: The first question for decision in this case is whether or not petitioner is subject to the tax imposed by section 104 (a) of the Revenue Act of 1928, by reason of the fact that it was formed, or during the taxable year ended November 30, 1930, was availed of, for the purpose of preventing the imposition of the surtax upon its sole shareholder through the medium of permitting its gains and profits to accumulate instead of being divided or distributed.

Petitioner reported a net loss on its 1930 income tax return in the amount of $565,025.52, which respondent reduced to a net loss of $47,674.60 by eliminating prior year net loss and certain deductions for bad debts and stock losses claimed by petitioner. The parties agree, therefore, that in no event is any tax due from petitioner under section 13 of the 1928 Revenue Act. Respondent determined the deficiency in controversy on the basis that petitioner was subject to tax under section 104, *supra*, and accordingly included in net income divi-

dends received in the amount of $160,762.52, which dividends are not taxable to petitioner under section 13.

Petitioner alleges that respondent erred in computing its tax liability under section 104, and, in the event we should hold it is subject to the tax imposed by that section, assigns as additional error the disallowance by respondent of certain deductions for bad debts and stock losses, more fully referred to hereinbelow.

If petitioner was either (1) formed, or (2) availed of in the taxable year for the purpose described in the cited statute, it is subject to the penalty tax as determined by respondent. *Fisher & Fisher, Inc.*, 32 B. T. A. 211, 217.

Petitioner on brief indulges in considerable argument in an effort to show that it was not formed for the prohibited purpose. We need not consider this point, for reasons which presently appear. Conceding that petitioner was formed, as its contends, for the sole purpose of taking over certain assets and assuming certain liabilities of the partnership of B. H. Howell Son & Co. with a view to discontinuance of the partnership business, it does not necessarily follow that petitioner in the taxable year 1930 was not availed of for the purpose of enabling its sole stockholder to escape surtax.

Petitioner corporation was organized in December 1922, with three stockholders who were members of the partnership mentioned, but in February 1925 James H. Post became petitioner's sole shareholder. Thereafter, and until the death of Post in 1938, the evidence, in our opinion, justifies the conclusion that Post, who possessed securities worth several million dollars, used petitioner merely as his personal holding or investment company. Under section 104 (b), the fact that any corporation is a mere holding or investment company constitutes prima facie evidence of a purpose to escape the surtax, and the burden is on petitioner to disprove the statutory presumption and the Commissioner's determination, *R. L. Blaffer & Co.*, 37 B. T. A. 851, 856; affd., 103 Fed. (2d) 487. The evidence, we think, falls measurably short of such disproof.

It is not contended that in the taxable year petitioner was a business corporation; that is, one engaged in carrying on a business enterprise. It was merely holding a limited amount of securities transferred to it by Post, and in that connection buying and selling securities, and investing and reinvesting its funds.

Petitioner urges that it was not in fact availed of in 1930 for the purpose of enabling Post to escape surtax through accumulation of its gains and profits, for the reason that it had no such accumulation. Substantially, this is the only ground upon which petitioner defends against respondent's contention that it was availed of in the tax year for the prohibited purpose. It is not denied that at the end of the

fiscal year 1930 petitioner's balance sheet disclosed a book surplus of $72,947.03, nor that it then held assets having a book value or cost which exceeded its accounts, notes, and debts payable by the amount of $1,838,637.87. It further appears that the market value of its assets exceeded its obligations payable by the amount of $930,368.09. Thus, disregarding capital stock, petitioner was not insolvent on the basis of either cost or market value of its assets. But petitioner says that, if its surplus had been computed on the basis of the then present value of its assets instead of original cost, its balance sheet at the end of the taxable year would have shown a deficit of over a million dollars instead of a small book surplus. We rejected a similar contention, strongly urged, in *R. L. Blaffer & Co.*, *supra*, saying at page 857:

The Board has already held that when considering a holding or investment company the diminution in market value of its securities may not be offset against income derived through gains and profits, interest, and dividends, so as to establish that the corporation was not availed of to save the shareholders from surtax. *Rands, Inc.*, 34 B. T. A. 1094; * * * *Nipoch Corporation*, 36 B. T. A. 662 * * *. As to a business corporation actually engaged in commercial operations, the effect of market values upon its surplus has been recognized as more substantial and the argument more engaging, *C. H. Spitzner & Son, Inc.*, 37 B. T. A. 511.

Petitioner received dividends from domestic corporations during the years 1923 to 1930, inclusive, in the total amount of $817,055.85. No dividends were declared or paid by petitioner during that period. It received dividends from domestic corporations during the tax year in the amount of $160,762.52, which it accumulated instead of distributing to its sole stockholder. It thereby did in fact save its sole stockholder from surtax. The statute does not operate merely because of such actual effect—only if such effect was the purpose, *Cecil B. de Mille*, 31 B. T. A. 1161; affd., 90 Fed. (2d) 12; certiorari denied, 302 U. S. 713; *C. H. Spitzner & Son, Inc.*, 37 B. T. A. 511. But here the presumption is that the accumulation of the dividends received by petitioner from other domestic corporations was for the purpose actually effected and petitioner has not disproved that such purpose was to enable its stockholder to escape surtax.

The dividends received by petitioner and in controversy here would have been taxable in the hands of its sole stockholder, irrespective of the diminution in market value of securities he did not sell, "and hence the purpose to enable him to escape surtax is not disproved by evidence of market value of securities held by his corporate instrument." *R. L. Blaffer & Co.*, *supra*, and decisions therein cited.

Respondent's determination that the petitioner is subject to the tax imposed by section 104 is approved.

Respondent argues that the $1,098,176.16 received by petitioner in 1923 from the payments made by the Sugar Equalization Board constituted income to it and should have been reflected in its surplus account at the end of the taxable year, which would have more than offset the deficit petitioner contends would have resulted from valuing its securities at market, instead of cost. Respondent further says that because the partners transferred their claim against the Government to petitioner and thereafter treated the matter as a capital transaction of the corporation, they escaped tax on the payments received from the Sugar Equalization Board in 1923. Respondent interprets these facts as persuasive proof that petitioner was "formed" for the purpose described in section 104. While some support for respondent's contentions in this connection undoubtedly may be found in the evidence, we prefer to rest our decision on the ground hereinabove set out. We deem it unnecessary, therefore, to devote further discussion to this point.

Petitioner contends that, even if we should hold on the facts that it is subject to tax under section 104, no penalty tax can be imposed upon it for the taxable year before us for the reason that respondent erroneously disallowed, or failed to allow, deductions which exceed the net income determined by him under section 104, and thus there is no basis for computation of the tax.

The first deduction in respect of which petitioner complains involves the so-called claim against the Hoyt estate. The circumstances surrounding this claim and how it arose are fully set forth in our findings of fact above. Petitioner acquired the claim in exchange for shares of its stock, and included it in its asset account at the agreed valuation of $407,500, but in 1925 in connection with the transaction with the Rockland Securities Corporation it reduced the amount to $203,750. In 1926 a suit was instituted against the Hoyt estate for the amount of $467,001, which suit was subsequently compromised and settled on May 4, 1929, for $212,600. As a result of this settlement petitioner delivered or destroyed the certificates of stock in the El Salvador Silver Mines Co. and the proceeding was thereupon terminated. Of the amount received in settlement, petitioner's share amounted to $94,870, leaving an unpaid balance on its books of $114,290.54, including $5,410.54 auditing and legal fees, which amount was charged off its books on December 1, 1929. Such amount was not claimed as a deduction in petitioner's income tax return, but it alleges that respondent erred in failing to allow the amount as a deduction in computing the net income taxable under section 104.

The facts do not support petitioner's contention. The suit instituted to enforce collection of the Hoyt claim was compromised and

settled on May 4, 1929, and the amount of petitioner's claim, in excess of its share of such settlement, became worthless on that date. The loss was sustained prior to the beginning of the taxable year 1930, notwithstanding the entry charging the amount off petitioner's books was recorded on December 1, 1929, the first day of the taxable year. Whatever amount of loss was sustained, if any, is allowable only in the year when sustained. The book entry is not controlling. Cf. *Lucas* v. *American Code Co.*, 280 U. S. 445; *Doyle* v. *Mitchell Brothers Co.*, 247 U. S. 179. Respondent's action on this issue is approved.

Petitioner assails respondent's action in failing to allow as deductions from gross income for the taxable year the amounts of $11,110 invested in capital stock of the Triangle Agricultural Corporation, and $2,993.39 and $8,980.28 representing loans to that corporation and to C. C. Smith, its president. The facts are fully set out hereinabove, and in our opinion definitely preclude the relief sought by petitioner.

It is shown that the business of this corporation was discontinued about April 1929, at which time it was hopelessly insolvent and unable to pay its debts. The circumstances existing at that time, we think, would have caused any reasonably prudent business man to conclude that the stock in the Triangle Corporation was worthless, as well as any debts owing by it. True, it owned a small amount of assets which were sold in 1932 for $2,250, but the corporation's indebtedness, including stock subscriptions, amounted to approximately $35,000. There is no evidence to show that Smith personally was in a position to meet his obligations or had assets which would have given value thereto.

The statute contemplates the deduction from gross income of losses which are fixed by identifiable events, such as the sale of property or its destruction or injury, or "in the case of debts, by the occurrence of such events as preclude their collection." However, "the taxing act does not require the taxpayer to be an incorrigible optimist." *United States* v. *White Dental Manufacturing Co.*, 274 U. S. 398.

On October 16, 1930, Smith wrote a letter to James H. Post, petitioner's sole stockholder, in which he promised personally to pay the indebtedness of the Triangle Corporation, including all stock subscriptions, and expressed the hope that in the following year, he would be able to begin "paying you part of the moneys you so generously advanced." There is nothing in the evidence to indicate what, if anything, this promise was worth, but if it was regarded by Post as worthless, then both petitioner's investment in Triangle stock and the loans made to that corporation and to Smith became

valueless not later than the taxable year 1929; but on the other hand if the situation was such that Post might reasonably have relied on Smith's promise, then petitioner's investment and loans did not become worthless until sometime subsequent to the taxable year 1930. Whatever may be the true facts, there is no evidence before us to establish that any identifiable event occurred in the taxable year to fix the incidence of loss in respect of the deductions claimed. The burden of proof is on petitioner, and, for failure to meet such burden, respondent's determination must be, and is, approved. *Burnet* v. *Houston*, 283 U. S. 223.

The remaining deduction disallowed by respondent involves wash sales of 200 shares of National City Bank stock. One hundred shares each were sold on August 8 and August 11, 1930, and petitioner thereafter purchased 200 shares of the same stock within 30 days, that is, on September 2, 1930.

Petitioner sold other shares of National City Bank stock on August 11 and August 12, sustaining a total loss of $13,465.70, which amount it claimed as a deduction in its 1930 income tax return. Respondent disallowed the losses sustained on the first two sales in the aggregate amount of $7,351.60, under the wash sales provisions of section 118 of the Revenue Act of 1928. Petitioner assigned error, but on brief made no reference to the issue thus raised.

Apparently petitioner has abandoned the issue, but in any event we approve respondent's action, which is plainly in accordance with the provisions of the statute. *Richard Coulter*, 32 B. T. A. 617.

*Decision will be entered for respondent.*