ESTATE OF HENRY H. WHEELER, SR., DECEASED, HENRY H. WHEELER, JR., AND FLORENCE RICHARDSON NEAL, EXECUTORS, AND VIOLET E. WHEELER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
ESTATE OF WHEELER v. COMMISSIONER
Docket Nos. 987-69, 988-69.
United States Tax Court
T.C. Memo 1979-321; 1979 Tax Ct. Memo LEXIS 202; 38 T.C.M. (CCH) 1236; T.C.M. (RIA) 79321; August 20, 1979, Filed Carl A. Stutsman, Jr., and Jack R. White, for the petitioners. Marion Malone, for the respondent. DAWSON
SUPPLEMENTAL MEMORANDUM OPINION DAWSON, Judge: On January 16, 1978, the Memorandum Findings of Fact and Opinion (T.C. Memo. 1978-15) were filed in these two cases and three other consolidated cases. Decisions in all dockets were directed to be entered pursuant to Rule 155, Tax Court Rules of Practice and Procedure. On June 4, 1979, the petitioners filed their computations for entry of decisions in Docket Nos. 987-69 and 988-69. Respondent filed his computations and proposed decisions on June 18, 1979. [1] A Rule 155 hearing was held on June 18, 1979, at Los Angeles, California. The only unagreed issue in these two cases is whether the petitioners should be allowed a short-term capital loss for the *205 year 1960 with respect to the loans made by Henry H. Wheeler, Sr. to American Sulphur and Refining Co. and whether portions of the loss are deductible in the years 1961, 1963, 1964, and 1965 under the capital loss carryover provisions of the Internal Revenue Code. The reason for the disagreement of the parties is that respondent's computations do not allow any deductions in any year for the loss the petitioners claimed they incurred with respect to the loans made by Mr. Wheeler to American Sulphur and Refining Co. The facts relating to this loss are set forth in T.C. Memo. 1978-15 at pages 182-189 and discussed in the opinion at pages 274-278. Petitioners claimed that a business bad debt loss of $832,587.32 was sustained in 1958. Respondent did not allow any part of the claimed loss in any year, contending that it was either a capital loss or a nonbusiness bad debt, and that it did not occur in 1958 because American Sulphur did not cease doing business in that year. In our opinion (page 278) we said: As our findings of fact reflect, wheeler had no loss in American Sulphur and Refining Company in 1958. It clearly occurred in a later year and, in our judgment, *206 constituted a nonbusiness bad debt. Although the "later year" contemplated by the Court was not expressly stated, the petitioners now assert that the necessary effect of our findings of fact places the loss in the year 1960 at the latest. In summary, we found that American Sulphur was engaged in business during 1958 and continued in business throughout 1959 and most of 1960. In 1959 it quitclaimed its mining claims and in 1960 it sold its patents. Its plant and equipment were sold on August 31, 1959. The lease for the land on which it operated was cancelled and the cancellation was recorded on February 1, 1960. In January 1960, American Sulphur formally acknowledged in writing that all of its leases had been cancelled and that a contract with Continental Sulphur had been cancelled and a release obtained. In addition, the corporation's final Federal income tax return was filed for the period from March 1, 1960 to February 28, 1961, but it showed that the corporation "did not engage in any business during the last three months of the year" and had no intention of engaging in business in the following year. In view of the above facts we agree with the petitioners that the indebtedness *207 of American Sulphur to Mr. Wheeler became worthless in 1960. By the end of that year American Sulphur had disposed of all of its assets and had ceased to engage in any business. Certainly by the end of 1960 Mr. Wheeler had no reasonable hope of recovering the loans he had made to American Sulphur. Therefore, under any accepted test for determining the year of worthlessness, we conclude that the loss was sustained in 1960. See Lucas v. American Code Co.,280 U.S. 445, 449 (1930), where the Supreme Court said that the "general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test." With respect to the amount of the loss, we also agree with the petitioners that the deductible nonbusiness bad debt attributable to the loans made by Mr. Wheeler to American Sulphur, based on the evidence and our findings, was $717,887.33, as shown in the following computation: Wheeler's advances to American
Sulphur prior to date of spouse's
death (January 9, 1955)
$107,769.51
Less 50% reduction as valued in
spouse's Estate Tax Return
53,884.75
$ 53,884.76
Less 1/2 applicable to Estate
26,942.38
Balance applicable to Wheeler
26,942.39 [2]
Advances after date of spouse's
death (1955-1958)
690,944.94 [3]
Deductible Loss
$717,887.33 [4]
*208 At the hearing on June 18, 1979, and in his memorandum of points and authorities filed on July 24, 1979, respondent contends that the petitioners are barred by the statute of limitations and the doctrine of laches from now claiming any loss on the loans to American Sulphur for any year other than 1958. To the contrary, *209 petitioners contend that they are not so barred; that the loss was sustained in 1960; and that the amount of such loss should be taken into account in determining their correct tax liability for 1960 and for the years 1961, 1963, 1964, and 1965 under the capital loss carryover provisions of the Code. Again we agree with the petitioners. They filed a claim for refund on or about April 15, 1961, claiming the loss as a business bad debt loss for the year 1958. They also filed claims at the same time seeking to carryback the resulting net operating loss to the years 1955, 1956, and 1957. Respondent's statutory notice in Docket No. 987-69, which determined deficiencies for each of the years 1956 through 1964, was mailed December 10, 1968. It disallowed the refund claims on the ground that no net operating loss was sustained in 1958, and respondent allowed no part of the loss to be deducted, either as an ordinary loss or capital loss, in any year. The notice in Docket No. 988-69, which determined a deficiency for the year 1965, was mailed December 31, 1968. As shown in respondent's answers to the petitions in these docket numbers, the petitioners and respondent executed timely *210 agreements consenting to the extension of the period of limitations for assessment of deficiencies with respect to each of the years 1960 through 1965. With respect to each of the years, the initial agreement to extend the period of limitations was executed within three years after the due date for the tax return for such year; and additional timely extensions were thereafter executed, extending the period of limitations for each of the years past the dates upon which the statutory notices eventually were mailed. The law is clear that once the Tax Court has acquired jurisdiction by the filing of a timely petition with respect to a notice of deficiency, it may consider all issues pertaining to the correct tax liability of the petitioners for the periods covered by the notice and petition. Our jurisdiction extends to an overpayment of tax in any one or more of the years before the Court. Section 6512(a) of the Code provides that, after a petition has been filed with the Tax Court, no credit or refund of any income tax for the same year or years shall be allowed, and the taxpayer may bring no action for the refund thereof, except-- (1) As to overpayments determined by a decision *211 of the Tax Court which has become final; and (2) As to any amount collected in excess of an amount computed in accordance with the decision of the Tax Court which has become final; and (3) As to any amounts collected after the period of limitation upon the making of levy or beginning a proceeding in court for collection has expired. By virtue of section 6512(a) and section 7422(e), the Tax Court alone had jurisdiction over the petitioners' 1958 refund claim, and also over any overpayments with respect to subsequent years up to and including 1965. Section 6512(b)(1) provides that if the Tax Court finds that the taxpayer has made an overpayment for a taxable year covered by the petition, "the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer." However, section 6512(b)(2) places a limit on the amount of credit or refund by providing as follows: (2) Limit on amount of credit or refund.--No such credit or refund shall be allowed or made of any portion of the tax unless the Tax Court determines as part of its decision that such portion *212 was paid-- (A) after the mailing of the notice of deficiency, (B) within the period which would be applicable under section 6511(b)(2), (c), (d), or (g), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment, or (C) within the period which would be applicable under section 6511(b)(2), (c), (d), or (g), in respect of any claim for refund filed within the applicable period specified in section 6511 and before the date of the mailing of the notice of deficiency-- (i) which had not been disallowed before that date, (ii) which had been disallowed before that date and in respect of which a timely suit for refund could have been commenced as of that date, or (iii) in respect of which a suit for refund had been commenced before that date and within the period specified in section 6532. Thus, the Tax Court would have had jurisdiction under section 6512(b)(2)(C) to determine that the petitioners had made an overpayment for the year 1958 resulting from the American Sulphur loss, based on the fact that petitioners filed a timely refund claim asserting *213 such loss in that year, which refund claim had not been disallowed prior to the mailing of the statutory notice. Of course, this Court did not find that there was an overpayment for 1958 because we concluded that the American Sulphur loss occurred in "a later year." In our opinion we have jurisdiction under section 6512(b)(2)(B) to determine that the year of loss was 1960, and to redetermine petitioners' tax liability for that year and all subsequent years up to 1965, based on such 1960 loss, including a determination that there were overpayments of tax in those years. Under section 6512(b)(2)(B) taxpayers are entitled to a refund of taxes found by the Court to have been overpaid, if the taxes were paid within the period of limitations for filing a claim for refund, "if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds there is an overpayment." Thus, it is not necessary that a refund claim actually be filed, but only that a timely claim could have been filed seeking recovery of the overpaid taxes at the time the statutory notice was mailed--i.e., that the overpaid taxes were *214 not yet barred for credit or refund when the notice of deficiency was issued. At the time the statutory notices were mailed in December 1968 in these cases, the period of limitations was still open under section 6511(c) for filing claims for refund for any taxes overpaid in any of the years now in question. Under section 6511(c) timely waivers extending the period of limitations for assessment of tax also extended the period of limitations for filing claims for refund until six months after the period provided for assessment in the waivers. The amount which may be claimed under section 6511(c) is limited to taxes paid after the execution of the waiver, plus the portion of the tax paid within the period which would be applicable under subsection (b)(2) if a claim had been filed on the date the waiver was executed. Subsection (b)(2) establishes the normal three-year period of limitations for refund claims. All of the taxes claimed by petitioners to have been overpaid for each of the years 1960, 1961, 1963, 1964, and 1965, by reason of a 1960 American Sulphur loss, were paid within three years of the time the first waiver was executed for such year. Hence, at the time of *215 the execution of the initial waivers, refund claims for such taxes could have been filed. Accordingly, such initial waivers of the period of limitations for assessment, and all subsequent timely extensions thereof, likewise extended the period of limitations for petitioners to file refund claims for those years until well after the date the statutory notices were issued. As previously indicated, under section 6512(b)(2)(B) it is immaterial that petitioners did not actually file any refund claims for these taxes. This Court acquired jurisdiction to determine that overpayments were made, and such overpayments should be refunded solely by virtue of the fact that refund claims still could have been filed when the statutory notices were issued. In addition, even without the existence of waivers, the seven-year period of limitations provided in section 6511(d) was still open for filing refund claims for each of the years 1961 through 1965, at the time the statutory notices were issued. This special period of limitations applies to any claims for refund relating to an overpayment arising out of the deductibility of a debt which became worthless or a loss from worthlessness of a *216 security, or the effect that the deduction of such debt or loss has on the application of a carryover. [5]
Finally, we reject respondent's contention made at the Rule 155 hearing that the petitioners are barred by the doctrine of laches. We are aware of no authority which supports the contention. The Court will enter decisions in Docket Nos. 987-69 and 988-69 in accordance with the petitioners' computations. Appropriate decisions will be entered.
Footnotes
1. Agreed computations and proposed decisions were also filed with the Court on June 18, 1979, in Docket Nos. 986-69, 989-69, and 990-69.↩
2. This figure constitutes the adjusted basis to Wheeler for his loans to American Sulphur made prior to the death of his first wife, Helen M. Wheeler. Such basis was established by the manner in which this community property indebtedness was treated in the estate tax return filed on behalf of Helen M. Wheeler, deceased. ↩
3. This sum represents the aggregate total of Mr. Wheeler's loans to American Sulphur for the years 1955, 1956, 1957, and 1959, supported by checks from Wheeler to American Sulphur. ↩
4. By allowing the American Sulphur loss as a nonbusiness bad debt deduction in the year 1960, only $422,059.94 of the $717,887.33 claimed by petitioners will actually be utilized. Under the statutory provisions applicable at the time, the capital loss carryover was limited to five years. Hence, the unused balance of the loss in question would expire after 1965.↩
5. Petitioners contend, in the alternative, that they are entitled to claim the American Sulphur loss in 1960, and the resulting carryover deductions in subsequent years, by virtue of the applicability of sections 1311 through 1315 of the Code. We find it unnecessary to consider such arguments.↩