LUCAS, COMMISSIONER OF INTERNAL REVENUE, *v.* AMERICAN CODE COMPANY, INC.

No. 67. Argued January 8, 1930.—Decided February 24, 1930.

*Solicitor General Hughes,* with whom *Attorney General Mitchell, Assistant Attorney General Willebrandt, Messrs. Alfred A. Wheat, Sewall Key* and *John Vaughan Groner,* Special Assistants to the Attorney General, *C. M. Charest,* General Counsel, and *P. S. Crewe,* Special At-

torney, Bureau of Internal Revenue, were on the briefs, for petitioner.

*Mr. Clark H. Hebner* for the respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court. .

When the income-tax return for 1919, of the American Code Company, Inc., was being audited in 1925, the Company filed with the Commissioner of Internal Revenue a claim for a refund based upon its failure to deduct from its 1919 gross income the amount for which judgment was recovered against it in 1922, on a contested liability for a breach of contract in 1919. The Commissioner of Internal Revenue rejected the claim and asserted a deficiency. His ruling was sustained by the Board of Tax Appeals. 10 B. T. A. 476. Its decision was reversed by the United States Circuit Court of Appeals for the Second Circuit. 30 F. (2d) 222. We granted a writ of certiorari. 279 U. S. 832.

The facts on which the claim for the refund is based are as follows: The Company agreed to employ Farquhar as sales manager for eighteen years from January 3, 1919, the compensation to be a commission based on sales. In May, 1919, it discharged him, for alleged cause. In July, 1919, Farquhar brought suit against it in the Supreme Court of New York for wrongful discharge, claiming $100,000 damages. Affirmative defenses were interposed and liability was contested. In October, 1919, the Company notified the Commissioner of the suit and asked leave to deduct in its income-tax return an amount equal to the commissions for 1919 computed on the contract basis. Permission was refused; but the Company set up on its books, at the close of the year, a reserve equal to

the amount of such commissions, $14,764.79. At the close of 1920, the amount in this reserve was increased by $32,994.09, computed on the same basis. In 1922, after a jury trial, judgment for $21,019.19 was entered in the trial court and, on appeal by the Company, was affirmed by the Appellate Division. The Company then prosecuted a further appeal to the Court of Appeals. In 1923 the judgment was affirmed by that court and paid by the Company. The judgment having been rendered by the trial court early in 1922 before the books were closed for 1921, the reserve set up was adjusted as of the close of 1921, to the amount of the recovery, $21,019.19. That sum is claimed as the deduction for 1919.

The Company kept its books and made its income-tax returns on the accrual basis. The Revenue Act of 1918, Act of February 24, 1919, c. 18, § 234 (a) (4), 40 Stat. 1057 1077–8, provides that in computing net income " losses sustained during the taxable year and not compensated for by insurance or otherwise " shall be allowed as deductions. Section 212 (b) provides that the net income shall be computed " in accordance with the method of accounting regularly employed in keeping the books of such taxpayer," unless the method employed does not clearly reflect the net income. And Article 111 of Regulations No. 45, (1920 ed.), of the Bureau of Internal Revenue provides that a " person making returns on an accrual basis has the right to deduct all authorized allowances, whether paid in cash or set up as a liability. . . ."

The Company's argument, sustained by the Court of Appeals, is that, since the breach of the contract occurred in 1919, all the facts which gave rise to the liability were fixed in that year; that damages must be assessed as of the date of the breach; that the loss therefore occurred in that year; and that it is immaterial that the amount of the damages was not determined or paid until later.

Attention is specifically called to the provision in Article 111, which declares that if after making a return "a taxpayer first ascertains the amount of a loss sustained during a prior taxable year which has not been deducted from gross income, he may render an amended return for such preceding taxable year, including such amount of loss in the deductions from gross income, and may file a claim for refund of the excess tax paid by reason of the failure to deduct such loss in the original return."

Generally speaking, the income-tax law is concerned only with realized losses, as with realized gains. *Weiss* v. *Wiener,* 279 U. S. 333, 335. Exception is made however, in the case of losses which are so reasonably certain in fact and ascertainable in amount as to justify their deduction, in certain circumstances, before they are absolutely realized. As respects losses occasioned by the taxpayer's breach of contract, no definite legal test is provided by the statute for the determination of the year in which the loss is to be deducted. The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal test. And the direction that net income be computed according to the method of accounting regularly employed by the taxpayer is expressly limited to cases where the Commissioner believes that the accounts clearly reflect the net income. Much latitude for discretion is thus given to the administrative board charged with the duty of enforcing the Act. Its interpretation of the statute and the practice adopted by it should not be interfered with unless clearly unlawful.

Article 111 of Regulations No. 45, interpreting the provisions as to deductions for losses, states: "Any amount paid pursuant to a judgment or otherwise on account of damages for personal injuries, patent infringement or otherwise, is deductible from gross income when the claim is put in judgment or paid. . . ." The

Board of Tax Appeals has held, in a series of well-reasoned opinions, that a loss occasioned by the taxpayer's breach of contract is not deductible in the year of the breach, except under the special circumstances where, within the tax year, there is a definite admission of liabilty, negotiations for settlement are begun, and a reasonable estimate of the amount of the loss is accrued on the books.[1]

It may be assumed that, since the Company kept its books on the accrual basis, the mere fact that the exact amount of the liability had not been definitely fixed in 1919 would not prevent the deduction, as a loss of that year, of the amount later paid. But here there are other obstacles. Obviously, the mere refusal to perform a contract does not justify the deduction, as a loss, of the anticipated damages. For, even an unquestionable breach does not result in loss if the injured party forgives or refrains from prosecuting his claim. And, when liability is contested, the institution of a suit does not, of itself, create certainty of loss. In the few cases in which the

[1] Appeal of Producers Fuel Co., 1 B. T. A. 202; Appeal of Brighton Mills, 1 B. T. A. 392; Appeal of New Process Cork Co., 3 B. T. A. 1339; Appeal of Bump Confectionery Co., 4 B. T. A. 50; Appeal of Hamler Coal Co., 4 B. T. A. 947; Empire Printing & Box Co. v. Commissioner, 5 B. T. A. 203; Appeal of Nice Ball Bearing Co., 5 B. T. A. 484, 495; Raleigh Smokeless Fuel Co. v. Commissioner, 6 B. T. A. 381; Farmers National Bank v. Commissioner, 6 B. T. A. 1036; Jewell v. Commissioner, 6 B. T. A. 1040; Lynchburg Colliery Co. v. Commissioner, 7 B. T. A. 282; Hidalgo Steel Co. v. Commissioner, 8 B. T. A. 76; Fraser Brick Co. v. Commissioner, 10 B. T. A. 1252, 1258; Safe Guard Check Writer Corporation v. Commissioner, 10 B. T. A. 1262; Ledbetter Manufacturing Co. v. Commissioner, 12 B. T. A. 145; J. G. Curtis Leather Co. v. Commissioner, 13 B. T. A. 1259, 1265. Compare Appeal of Lane Construction Co., 4 B. T. A. 1133; Celluloid Co. v. Commissioner, 9 B. T. A. 989, 1005; Graham-Bumgarner Co. v. Commissioner, 11 B. T. A. 603, 605; Lehigh & Hudson River Ry. Co. v. Commissioner, 13 B. T. A. 1154, 1164.

Board of Tax Appeals has allowed a deduction in the year of the breach, the contracts, involving the purchase and sale of goods, were performable in a comparatively short period; the approximate amount of the damages was reasonably predictable; negotiations for settlement had been commenced within the year and were completed soon after its close; and the taxpayers had accrued on their books, at the end of the year, a liability reasonably estimated to equal the amount of the damages.[2]

In the case at bar, the contract had nearly eighteen more years to run, at the time of his breach. Liability for the breach was denied and strenuously contested, the litigation being carried to the highest court of the State. The amount of the damages, if any, was wholly unpredictable. While the facts determining liability had occurred in the year of the breach, the amount to be recovered, if there was legal liability, depended in large part on the course of future events. Farquhar was under a duty to mitigate damages. He might have procured new employment which would have reduced his recovery to a nominal amount. Or, recovery might have been reduced or defeated by his death. Finally, the Company did not accrue on its books, within the tax year, a liability in the estimated amount of the loss. The reserve set up had no relation to the apprehended total loss. It constituted simply the amount of the commissions which would have

---

[2] Thus, in Appeal of Producers Fuel Co., note 1 *supra*, there were two contracts for the purchase, respectively, of 15,700 and 20,000 tons of coal in equal monthly instalments between May 1920 and March 1921 and between May 1920 and May 1921. Both contracts were broken in December 1920 and offers of settlement were immediately made. Reserves of $7,500 and $30,000 were set up in 1920. The claims were settled in January 1921 for $5,500 and $29,792.40. Similar situations were involved in Raleigh Smokeless Fuel Co. *v.* Commissioner and Fraser Brick Co. *v.* Commissioner, *ibid.*

been payable in that year if Farquhar had remained in the Company's employ. That the Company did not intend the reserve to be an accrual of the total estimated loss is clearly indicated by the fact that, in 1920, it charged to the reserve, to cover the commissions which would have been payable in 1920, an additional amount, more than double that charged in 1919.

The prudent business man often sets up reserves to cover contingent liabilities. But they are not allowable as deductions.[3] The reserve set up by the Company was of that character. It cannot be said that the loss actually paid by the Company in 1923 was, as a matter of law or of undeniable fact, sustained in 1919. Nor did the Company so regard it. The case at bar is unlike *United States* v. *Anderson,* 269 U. S. 422. There, the liability for the munitions tax at a fixed rate on the business done in 1916 had confessedly accrued in that year and was a charge on the business of that year, although the exact amount due may not have been then ascertainable and the tax was not payable until 1917. It is also unlike *American National Co.* v. *United States,* 274 U. S. 99. There, the bonus contract provided definitely for the payment of a fixed amount. It was *debitum in praesenti, solvendum in futuro.* The case at bar is in principle more like *Lewellyn* v. *Electric Reduction Co.,* 275 U. S. 243.

*Reversed.*

---

[3] Compare Appeal of Uvalde Company, 1 B. T. A. 932; Appeal of M. C. Stockbridge, 2 B. T. A. 327; Appeal of Northwestern Bakers Supply Co., 2 B. T. A. 834; Appeal of Richmond Light & R. R. Co., 4 B. T. A. 91; Alston v. Commissioner, 4 B. T. A. 1159; The Davis Co. v. Commissioner, 6 B. T. A. 281, 283; Fibre Yarn Co. v. Commissioner, 10 B. T. A. 479, 480; Kaufman Department Stores, Inc. v. Commissioner, 11 B. T. A. 949.