**WESCH v. HELBURN, Collector of Internal Revenue.**

**No. 1494.**

District Court, W. D. Kentucky.

Aug. 12, 1933.

Edward Bloomfield, of Louisville, Ky., for plaintiff.

Frank A. Ropke, Asst. U. S. Atty., of Louisville, Ky., and E. Riley Campbell, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for defendant.

DAWSON, District Judge.

The sole question in this case is whether or not the investment of Gustave A. Wesch, the deceased taxpayer, in BancoKentucky stock was a deductible loss for income tax purposes for the taxable year 1930, under section 23 (e) of the Revenue Act of 1928, 26 USCA § 2023 (e). This section provides that in computing net income there shall be allowed as deductions, in the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business, or if incurred in any transaction entered into for profit, though not connected with the trade or business.

█ Taxation is eminently a practical matter, and a reasonable and practical construction should be given to section 23 (e). In Lucas v. American Code Co., 280 U. S. 445, 50 S. Ct. 202, 203, 74 L. Ed. 538, it is declared: "The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test."

In discussing a similar provision of the

1918 act, the Supreme Court of the United States, in the case of United States v. S. S. White Dental Mfg. Company, 274 U. S. 398, 47 S. Ct. 598, 600, 71 L. Ed. 1120, used this language: "The statute obviously does not contemplate and the regulations (article 144) forbid the deduction of losses resulting from the mere fluctuation in value of property owned by the taxpayer. * * * But with equal certainty they do contemplate the deduction from gross income of losses, which are fixed by identifiable events, such as the sale of property (articles 141, 144), or caused by its destruction or physical injury (articles 141, 142, 143), or, in the case of debts, by the occurrence of such events as prevent their collection."

See, also, Denman v. Brumback, 58 F. (2d) 128 (C. C. A., 6th Cir.); Forbes v. Commissioner, 62 F.(2d) 571 (C. C. A., 4th Cir.)

■ It is stipulated in this case that the BancoKentucky Company was placed in the hands of a receiver on November 24, 1930, and the receivership has continued ever since. The stipulation and the evidence establish that at the time the company went into receivership it was hopelessly insolvent, and that the stockholders in liquidation would not receive a penny for their stock. Notwithstanding this fact, the defendant contends that the loss of the taxpayer was not sustained, within the meaning of the law, in 1930. This argument is based upon the fact that from November 24, 1930, the date of the receivership, up to January 8, 1931, the stock of BancoKentucky, which, until the latter date, had been listed on the Chicago Exchange, was daily sold on the Exchange in considerable blocks, and upon the further fact that numerous sales were made in Louisville after the receivership during practically the remainder of the year 1930, and these sales ranged from 12½ cents to 62½ cents; the par value of the stock being $10 per share. It is urged that, as the plaintiff could have sold his stock in 1930, but did not do so, the drop in the sale price thereof, as evidenced by sales the latter part of the year in Louisville and Chicago, was not a deductible loss within the meaning of the Revenue Act of 1928, but was simply a fluctuation in the value of plaintiff's property, for which he was not entitled to claim any deduction. This argument, however, is more plausible than sound.

When BancoKentucky Company went into the hands of a receiver, and certainly before the end of the calendar year 1930, it must have been apparent to any one who made the slightest investigation that the common stock of that company was an absolute loss. The record in this case satisfies me beyond any sort of question that the drop in the price of Banco stock from $8 per share, or thereabouts, on November 16, 1930, to 62½ cents on November 25, 1930, and to 12½ cents before the end of the year, did not represent a fluctuation in the value of the stock to be expected at times on the Stock Exchange, but resulted from the compelling conviction in the minds of the buying public that the stock, because of the insolvency and receivership of Banco, and of the insolvency and receivership of companies in which Banco was interested, had become worthless. I am satisfied from the evidence in this case that the sales made after the receivership were, in large part, prearranged for the purpose of establishing income tax losses, or else represented purchases made by incorrigible optimists, in defiance of common sense and the generally known and accepted facts.

When all the facts are considered, I do not think these sales can be accepted as any evidence that the stock, in the latter part of 1930, had any appreciable value. It is in evidence that the taxpayer made inquiry through a brokerage house after the receivership to see if Banco stock could be sold, and was advised that it could not. Furthermore, it must be assumed that he knew, what any interested party could easily have ascertained, viz. that the stock was worthless. No sensible person, under the record in this case, would have done otherwise than to treat his investment in Banco stock as a total loss in December, 1930.

I am therefore of the opinion that the taxpayer was fully within his rights when he claimed his investment in this stock as a deductible loss, sustained in the year 1930, and judgment may be drawn in harmony with the views herein expressed. The stipulation of facts, supplemented by the findings here announced, may be used by counsel as the basis for the findings of fact to be submitted for approval.