FREDERICK S. BUGGIE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41164.   Promulgated May 9, 1935.

*Albert E. James, Esq.*, and *C. H. Mote, Esq.*, for the petitioner.
*James H. Yeatman, Esq.*, for the respondent.

## OPINION.

MURDOCK: Counsel for the petitioner argue in their brief, first, that the petitioner realized no gain whatsoever from the disposition of the shares because the shares did not belong to him, but were the corpus of a constructive trust; second, the petitioner was guilty of a breach of trust and the realization of income in such case should be deferred until the rights of the various parties were finally determined; and, third, if the gain is to be taxed as income of 1926, it should be computed by deducting $125,000, the additional cost of the property paid in 1929. The Commissioner contends, with respect to the first two arguments, that the existence of a constructive trust and the fact that the shares did not belong absolutely to the petitioner, have not been pleaded. However, decision of the case need not turn upon the question of pleadings, since the evidence does not show that the petitioner ever occupied any position of trust which would affect his purchase of the stock.

Throughout this proceeding the petitioner's counsel have said repeatedly that the petitioner was at fault in his dealings with the Wrights, while the petitioner has consistently maintained that he was not at fault in the slightest. The petitioner was the only witness in the case. He testified that all of his transactions with Na-

thaniel C. Wright and with Etha Wright were open and honorable, he took no advantage of either of them in these transactions, and the 750 shares, as well as the cash which he received from the sale of the shares, were his property absolutely. Not only does his testimony fail to indicate that his conduct was in any way reprehensible, but, on the contrary, it tends to prove that he took no advantage whatsoever of the Wrights, he held no position of trust which would affect his purchase of the stock, and his purchases were fair, valid, and not subject to question.

If any constructive trust existed which affected the petitioner's income tax for 1926, its existence should have been proved. Unless his fault is to be inferred from the fact that he settled the suits, there is no evidence to support the constructive trust theory of his counsel. He denied all of the allegations made by the Wrights in the suits against him which cast any reflection upon his prior actions or which were inconsistent with his absolute ownership of the shares of stock at the time he sold them to Block. He has always felt that Block deliberately stirred up this trouble for him and that there was nothing to support the claims of the plaintiffs in those cases. The suits never came to trial and the issues were never judicially determined. The amount he paid in settlement was less than his profit from the sale. The cases were settled by the petitioner upon the advice of a majority of the attorneys whom he had consulted. But a poll of his attorneys in those cases does not constitute evidence establishing a constructive trust for the purpose of this case. Furthermore, other matters were settled at that time and payments were made to the petitioner. Neither fault nor liability on the part of the petitioner need be inferred from the fact that he settled the lawsuits. That settlement is not analagous to a plea of guilty in a criminal proceeding, as his counsel suggests. He mentioned a power of attorney from Wright which enabled him to transact some business on Wright's behalf. But the record does not show the exact nature, purpose, or scope of that power of attorney and does not show that it had any connection whatever with the transactions involved herein. The existence of a constructive trust should not be inferred from the fact that the petitioner had close business and social relations with the Wrights. Wright suggested the sale and fixed the price for the stock. He seems to have been thoroughly familiar with the entire transaction. The evidence does not show that the price fixed was other than a fair one. Etha Wright may have known as much about the business, prospects, and stock of the Newark Star Publishing Co. as the petitioner did, for all this record shows.

The petitioner not only received the proceeds of the sale in cash in 1926 under claim and color of title and without restriction as to the disposition thereof, but at that time and for some time there-

after there was no indication, so far as this record shows, that anyone was disposed or in position to dispute his absolute title to the proceeds of the sale. These proceeds included profits. There was no uncertainty at that time about his right to retain the profits. The Supreme Court said in *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417:

> If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent.

Cf. *R. V. Board*, 14 B. T. A. 374; affd., 51 Fed. (2d) 73; certiorari denied, 284 U. S. 658; *Burnet* v. *Sanford & Brooks*, 282 U. S. 359. The difference between the amount which he paid for the stock and the amount which he received in 1926 in cash was income for 1926. The settlement and the payment which he made in 1929 do not affect his 1926 income. Whatever effect they have upon his income should be reflected in a correct return of his income for 1929. Cf. *North American Oil Consolidated* v. *Burnet, supra; Burnet* v. *Sanford & Brooks, supra; Lucas* v. *American Code Co.*, 280 U. S. 445; *South Dakota Concrete Products Co.*, 26 B. T. A. 1429.

One further point should not be overlooked, although it does not affect the decision. The evidence clearly establishes that the petitioner acquired 750 shares from the Wrights for a total consideration of about $99,997.50, and it further establishes that all of those shares were sold to Block in 1926 for a total consideration of about $525,000. Thus the amount realized from the disposition of these shares exceeded their cost to the petitioner by about $425,000. Furthermore, it appears that the petitioner joined with two of his associates in purchasing 750 shares from Block in the latter part of 1925 at a cost not shown in the record. The return does not disclose how many shares were involved in the transactions therein reported, but the total profit shown on the return from the disposition of stock of the Newark Star Publishing Co. was only about $260,000. The record contains no satisfactory explanation of why the petitioner did not report a total profit of at least $425,000 from his sale of 750 shares of the stock of the Newark Star Publishing Co. in 1926. Counsel for the petitioner in a reply brief state that in the joint return for 1926 a profit was reported from the disposition of 450 shares and the remaining 300 shares of the original 750 belonged to a trust for the petitioner's daughter. They further concede that only $75,000 of the $125,000 paid in settlement would apply to the 450 shares. The petitioner testified that he gave 449 shares to his wife and 300 shares to his wife in trust for his daughter. However, he further testified that no transfers of these shares were

made upon the books of the company, the certificates were endorsed by his wife, and he subsequently reacquired the 449 shares and the 300 shares by simply recalling his gifts. Thus he appears to have been the owner of at least 750 shares at the time of the sale to Block. The Commissioner is making no claim for an increased deficiency and hence the Board has no authority to add anything to the petitioner's income. However, these circumstances certainly indicate that the petitioner's profit from the sale in 1926 was not overstated on his return.

*Decision will be entered for the respondent.*