BROWN v. COMMISSIONER OF INTERNAL REVENUE.

No. 7317.

Circuit Court of Appeals, Sixth Circuit.

Jan. 5, 1938.

W. W. Spalding, of Washington, D. C. (Mason, Spalding & McAtee, of Washington, D. C., on the brief), for petitioner.

Harry Marselli, of Washington, D. C. (Robert H. Jackson, Sewall Key, and Howard P. Locke, all of Washington, D. C., on the brief), for respondent.

Before HICKS and SIMONS, Circuit Judges, and RAYMOND, District Judge.

SIMONS, Circuit Judge.

The determination by the Board of Tax Appeals that an investment of the petitioner in the stock of a corporation became a loss sustained in the taxable year 1930, rather than in 1931, is the only finding or conclusion sought to be reviewed.

The corporation in the stock of which the investment was made is the Banco-Kentucky Corporation, incorporated in 1929 under the laws of Delaware for the purpose of owning and controlling banks and trust companies in Louisville, Ky., and elsewhere. Its short and turbulent history is sufficiently recited by us in Atherton v. Anderson, 6 Cir., 86 F.2d 518, 534 to 536. The petitioner purchased 2,000 shares of its capital stock in 1929 for $50,000. From the date of its organization to November 15, 1930, the corporation received into its treasury in payment for its shares upwards of $61,000,000 in cash and property. Among the assets acquired was stock in Caldwell & Co., a banking and brokerage firm of Nashville, Tenn., representing a purchase price of $22,500,000, trustee certificates representing stock in the National Bank of Kentucky and the Louisville Trust Company, both in Louisville, to the amount of $27,000,000, and stock in various banks, including the Security Bank of Louisville, costing upwards of $10,000,000. Banco-Kentucky stock was traded upon the Louisville Stock Exchange and the Chicago Stock Exchange. Upon the Chicago Exchange it reached a high in 1929 of $33⅛ per share. By November 15, 1930, it had slipped to $7 per share.

Beginning with the latter date important events bearing upon the solvency of Banco-Kentucky followed in rapid succession to a catastrophic conclusion. November 15th Caldwell & Co. was placed in the hands of a committee of the National Clearing House, and two days later was put into receivership by the United States District Court at Nashville. November 17th the National Bank of Kentucky was taken over by the Comptroller of the Currency, and upon the same day the Louisville Trust Company turned over its affairs to the State Banking Commission, and the Security Bank closed its doors. At about the same time Banco-Kentucky sold its stock in various banks at a loss of nearly $8,500,000, and was itself placed in the hands of a receiver on November 24th, where it has since remained. The trial balance of its receiver as of December 31, 1930, disclosed net assets of a little over $6,000,000, but the receiver's estimate of their value as of that date was $1,688,577.52. Against such assets were claims, among which was an asserted liability against it as stockholder of the National Bank of Kentucky and the Louisville Trust Company, of approximately $5,400,000, and for the year 1930 it had sustained an operating loss of nearly $46,000,000. Following the happening of the events thus narrated Banco-Kentucky stock continued to be traded in upon the Chicago Exchange, although its price dropped on November 17th and 18th to $1.50 and $1 per share, respectively, and

reached a low of 12½ cents per share on December·13th, after which it fluctuated between 12½ and 25 cents per share for the remainder of the calendar year. For the first five market days of 1931 trading still continued within such price range to January 8th, when the shares were removed from the list of the exchange.

The petitioner contends that since his shares still had a market value in 1931, even though small, his loss was not sustained until that year. It was then that he claimed it. The respondent asserted a deficiency, disallowing the deduction as a loss during that taxable year. The taxpayer sought review by the Board of Tax Appeals. There it was stipulated that evidence taken on the issue as to the time the shares became worthless in the District Court for the Western District of Kentucky (Wesch v. Helburn, 5 F.Supp. 581) be received. It consisted upon behalf of the respondent mainly of proof of the disasters which had overtaken the various banks and trust companies whose stock constituted the assets of Banco-Kentucky, together with an analysis by the receiver for Banco of the major losses suffered by such banks and trust companies and of the affairs of many of their principal debtors. The petitioner relied principally upon the quotations for Banco-Kentucky stock upon the several exchanges and evidence of efforts of creditors' committees in Louisville during 1930 and 1931 to formulate plans for the rehabilitation of the National Bank of Kentucky and other institutions involved. The Board of Tax Appeals sustained the Commissioner's finding that the petitioner's loss was suffered in 1930, that it was not an allowable deduction in 1931, and redetermined the deficiency.

■ The question whether property becomes worthless during a particular year is one of fact, if substantial evidence is adduced upon which a factual determination may be made. The only question of law presented in review is whether the Board's findings are supported by substantial evidence. Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289; Tracy v. Commissioner, 6 Cir., 53 F.2d 575.

■ The statute applicable to the deduction here claimed is section 23 of the Revenue Act of 1928, 26 U.S.C.A. § 23 and note. It permits deduction in computing net income of "losses sustained during the taxable year and not compensated for by insurance or otherwise." Whether losses are sustained in a given year calls for a practical and not a legal test. Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010. While mere fluctuation in the value of a taxpayer's property do not ordinarily furnish a basis for allowable deductions, New York Insurance Co. v. Edwards, 271 U.S. 109, 116, 46 S.Ct. 436, 437, 70 L.Ed. 859; Miles v. Safe Deposit Co., 259 U.S. 247, 42 S.Ct. 483, 66 L.Ed. 923; yet such losses may be fixed by identifiable events from which it may with reasonable certainty be ascertained that they have been sustained, United States v. White Dental Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120; Denman v. Brumback, 6 Cir., 58 F.2d 128; Royal Packing Co. v. Commissioner 9 Cir., 22 F.2d 536; DeLoss v. Commissioner, 2 Cir., 28 F.2d 803. As has been said, losses are suffered when value becomes finally extinct. In Jeffery v. Commissioner, 6 Cir., 62 F.2d 661, we held that, where bankruptcy intervenes and there is no possibility of the taxpayer deriving value from his investment in stock except in the event of a proposed and very problematical reorganization, the losses are suffered in the year in which bankruptcy occurs. A similar identifiable event indicating probability of total loss of stock investment comparable to an adjudication in bankruptcy is a decision to liquidate. Gowen v. Commissioner, 6 Cir., 65 F.2d 923.

■ The question in the present case is whether the value of the petitioner's stock had become finally extinct following the events which transpired in 1930 before the end of that year. The receiver for Banco-Kentucky thought it had. Petitioner challenges his opinion as evidence. It is true, as we held in Tracy v. Commissioner, supra, and Grand Rapids Store Equipment Corporation v. Commissioner, 6 Cir., 59 F.2d 914, that the Board is not bound to accept opinion evidence, but may exercise its own judgment on all of the evidence. Certainly this is so when it reaches a conclusion not arbitrarily but in accordance with some knowledge of its own which it has of the subject matter from experience with it. Nachod & United States Signal Co. v. Helvering, 6 Cir., 74 F.2d 164. This does not mean, however, that the Board is under compulsion to reject opinion when it is not mere naked opinion but is based upon facts and records within the knowledge of witnesses which the Board is enabled to evaluate and so to draw its own conclusions as

to the probative value of the opinion. Cf. Balaban & Katz Corporation v. Commissioner, 7 Cir., 30 F.2d 807.

There remains the circumstance that stock was traded in on the Chicago Exchange at a nominal price for a few days during 1931. This was undoubtedly a circumstance to be considered by the Board, but we know of no rule that gives it conclusiveness. Stock quotations upon an open market are undoubtedly evidence of value, but where other evidence challenges value, where the bona fides of sales is questioned, and where the stock speedily disappears from the market, we are unable to say that the Board should have considered such sales as controlling upon the question of value. It is not unimportant to note that, when upon the same record the issue of worthlessness in 1930 was submitted to the District Court in Wesch v. Helburn, supra, the court found no difficulty in ascertaining that the loss was sustained in 1930, rather than in 1931, although it was obliged to apply a more rigid test to the proofs, for the problem in the District Court was not merely that of ascertaining whether there was substantial evidence of worthlessness, but whether such evidence preponderated over countervailing evidence. It is also to be noted that the court found upon the same record that sales of stock after the receivership were in large part prearranged to establish income tax losses or represented purchases in defiance of common sense and generally known and accepted facts, not the first instance, undoubtedly, where money has been paid for worthless stock.

The decision of the Board of Tax Appeals is affirmed.