LOUISVILLE TRUST CO. v. GLENN,
Collector of Internal Revenue.

No. 2104.

District Court, W. D. Kentucky.

June 7, 1940.

404

A. C. Van Winkle, Allen P. Dodd, and Dodd & Dodd, all of Louisville, for plaintiff.

Andrew D. Sharpe and James E. Murphy, Sp. Assts. to the Atty. Gen., and Eli H. Brown, III, U. S. Atty., of Louisville, Ky., for defendant.

MILLER, District Judge.

The plaintiff the Louisville Trust Company as executor of the estate of John B. Pirtle brought this action to recover from the Collector of Internal Revenue the sum of $20,818.19 with interest, being the amount paid by it under protest as a deficiency income tax assessment for the year 1933. The question involved is whether a loss resulting from the purchase of securities which subsequently became worthless occurred in the taxable year 1930 or in the taxable year 1933.

On June 7, 1926, John B. Pirtle entered into a written agreement with the Louisville Trust Company under the terms of which Pirtle turned over to the Louisville Trust Company his estate for handling and management. The estate included 225 shares of the capital stock of the Louisville Trust Company and a few shares of stock of the National Bank of Kentucky which holdings were increased during the succeeding twelve months until on the 1st of June, 1927, it included 296 shares of stock of both the Louisville Trust Company and National Bank of Kentucky. On June 28, 1927, the Louisville Trust Company exchanged the 296 shares for 296 shares of Trustees Participating Certificates issued under a trust agreement entered into between the stockholders of the Louisville Trust Company and the National Bank of Kentucky. Subsequently the par value of the 296 participating certificates was reduced from $100 to $10 and the Louisville Trust Company exchanged the 296 shares which it held for 2,960 of the new certificates. On July 16, 1929, the Banco Kentucky Company was organized under the laws of Delaware. On July 29, 1929 the Louisville Trust Company as agent for Pirtle subscribed for 2,000 shares of the Banco Kentucky stock at $25 per share for which it paid $50,000 of Pirtle's money. Also on July 29, 1929, the Louisville Trust Company as agent for Pirtle exchanged the 2,960 shares of unified stock of the National Bank of Kentucky-Louisville Trust Company for 5,920 shares of the capital stock of the Banco Kentucky Company. The fair market value of the 2,960 shares at the time of the exchange was $47,895.25, which, with the $50,000 paid out for the stock purchased outright made a total of $97,895.25 as the value of the stock at said time. On November 17, 1930, both the National Bank of Kentucky and the Louisville Trust Company closed its doors and a few days thereafter the Banco Kentucky Company which owned practically all of the participating certificates of these two banks was placed in receivership. By the end of the year 1930 the stock of the Banco Kentucky Company was selling as low as 12½ cents per share, and a few sales at from 12½ cents per share to 25 cents per share occurred on the Chicago Exchange during

the first few days of January, 1931. The stock was removed from the list of the Exchange on January 8, 1931, at which time it was generally conceded that Banco Kentucky Company was hopelessly insolvent and would not pay its creditors in full.

Under the agreement of June 7, 1926, between Pirtle and the Trust Company it was provided by Paragraph 5 as follows: "5. None of the securities or other estate held under this contract shall be sold, transferred or exchanged without the approval of first party, and all reinvestments shall be made by or at the special instance of first party, or in the absence of such request, to be invested as trust funds are by law invested under the statutes of the State of Kentucky."

On January 23, 1931, Pirtle was adjudged by the Jefferson Circuit Court, Criminal Division, which court had jurisdiction in the matter, to be a person of unsound mind, and on that date the Fidelity and Columbia Trust Company was appointed his committee by order of court. The committee qualified and acted in that capacity until the death of Pirtle in January, 1934. The Louisville Trust Company qualified as Pirtle's executor. Pirtle was of unsound mind for some two years or more prior to his adjudication, and accordingly did not approve the exchange of participating certificates for stock of the Banco Kentucky Company or request or approve the purchase of that stock in 1929. The Fidelity and Columbia Trust Company as committee for Pirtle received Pirtle's estate from the Louisville Trust Company, which included the 7,920 shares of the capital stock of the Banco Kentucky Company. It set up this investment on its books at the same value that the Louisville Trust Company had previously carried it, namely, $84,017, but declined to accept it as a proper investment and demanded of the Louisville Trust Company the sum of $97,895.25, being the fair market value of the stock at the time when it was received by the Louisville Trust Company. The committee's position was based upon Section 4706 of the Kentucky Statutes as it existed at the time the investment was made in Banco Kentucky stock and which limited the types of securities in which a fiduciary could invest the funds in a trust estate. The prohibition specifically relied upon in Section 4706 was as follows: "But such funds shall not be invested in the bonds or securities of any railroad or other corporation unless such railroad or other corporation has been in operation more than ten years, and during that time has not defaulted in the payment of principal or interest on its bonded debt, * · * *."

At the time when the investment was made Banco Kentucky Company was a new corporation. The Louisville Trust Company refused the demand of the committee. The committee thereupon employed attorneys to enforce the demand, and litigation was threatened. After many months of negotiations a compromise settlement was arrived at in January, 1933, by which the Louisville Trust Company paid to the committee the sum of $75,000 in full and complete settlement of its demands. Before this settlement was carried through the committee filed its petition for advice in the Jefferson Circuit Court and obtained an order in that court authorizing it to compromise the demands of the committee at the above figure. The committee received the $75,000 during the taxable year of 1933.

Following the appointment of the committee in January, 1931, it filed an income tax return for the year 1930 for the Pirtle estate and claimed as a deduction the entire investment in Banco Kentucky Company stock. This deduction was disallowed by the Commissioner who ruled that the stock had not become worthless during the year 1930 and could not therefore be taken as a loss. In 1934 the committee filed its income tax return for the estate for the taxable year of 1933 and claimed a net loss to the estate of $32,105.25 by reason of the facts above set out. This amount was arrived at by deducting from the total investment of $97,895.25 the amount received by the compromise settlement, namely, $75,000 and by adding to that loss the amount of $7,500 which it had paid out as legal fees in enforcing its demand against the Louisville Trust Company. The Commissioner of Internal Revenue refused to allow the loss as a proper deduction for the calendar year of 1933 and ruled that the loss in the investment had occurred during the calendar year of 1930, thus reversing its previous ruling on the same point. This change in ruling resulted from the decision of the United States District Court for the Western District of Kentucky rendered on August 12, 1933, in the case of Wesch v. Helburn, Collector, 5 F.Supp. 581, wherein it was held that the stock of Banco Kentucky Company became completely worthless during the calendar year of 1930 and

was a proper deduction against income received during that year. The Circuit Court of Appeals for the 6th Circuit in January, 1938, ruled to the same effect in the case of Brown v. Commissioner of Internal Revenue, 94 F.2d 101. This resulted in a re-determination of the income tax liability for the year 1930, which disclosed an overassessment of $2196.31 with interest for that year. The Commissioner then treated the $75,000 received by the committee during 1933 as income received during 1933 which resulted in a re-determination of the income tax liability for that year showing a deficiency of $20,414.46 with interest. The 1933 deficiency assessment was credited with the overassessment for the year 1930 and the executor was called upon to pay the net amount. This assessment was a jeopardy assessment which the executor paid under protest on July 20, 1936. This action was thereafter brought for its recovery.

The plaintiff recognizes the general rule of law that the owner of a corporate security which becomes worthless is entitled to take the deduction for income tax purposes for the calendar year in which it was determined that the investment became worthless. In this case the investment became worthless in 1930. It contends, however, that the Pirtle estate never became the legal owner of the Banco Kentucky stock in question in that it was purchased by the Louisville Trust Company as trustee rather than as agent, without authority and its purchase was never ratified or approved by Pirtle or by his committee, and that as a result of that situation no loss was actually sustained by the Pirtle estate until the compromise settlement was reached in 1933. It further contends that the amount of any loss sustained even as owner of the stock was not ascertainable, and therefore not deductible, until its recoupment against the Louisville Trust Company was fixed by the compromise of 1933. The plaintiff also contends that the Commissioner was estopped from claiming the loss as occurring during 1930 because of his previous ruling refusing to recognize such a claim when the income tax return for the year 1930 was first filed. The defendant claims (1) that The Louisville Trust Company acted as agent for Pirtle when the stock was acquired in 1929, and not as trustee and accordingly Pirtle became the legal owner of the stock at that time; (2) that any loss caused by the unauthorized act of the Trust Company was not one recognized as a deduction by the Income Tax Laws, and (3) that the loss in any event occurred in 1930 when the stock became worthless.

The court construes the agreement of June 7, 1926, between the Trust Company and Pirtle as creating the relation of principal and agent and not as the establishment of a trust estate. The instrument is styled "This Contract of Agency * * *", and paragraph 7 refers to the securities held "for said agency account." The expressed purpose of the contract was to relieve Pirtle of the cares and details incident to the handling of his estate, and at the same time it retained in Pirtle the absolute control of all investments. Pirtle reserved the right to cancel the arrangement upon ten days notice. The Trust Company was to receive no compensation. The evident intention of the parties was to enter into a contract of agency. The instrument is to be construed in accordance with that intention. The transaction is controlled by the law applicable to principal and agent, and not by the rules governing trustee and beneficiary as cited by the plaintiff. See Reily v. Fleece, 259 Ky. 330, 82 S.W.2d 341.

We see no grounds for estoppel against the Commissioner. He will of course not be permitted to change his rulings at will in order to create a larger tax liability. In this case his first ruling that the loss was not deductible in the year 1930 was later changed because of a federal District Court decision of the district of the residence of this taxpayer holding that it was deductible for the year 1930. It was proper for him to follow that decision in so far as it was applicable to cases which were still open for reassessment.

Defendant's contention that the loss occasioned by any breach of the Trust Company's agreement with Pirtle was not a loss deductible under the Internal Revenue Laws is difficult to understand. We recognize as sound his contention that all losses, regardless of character, are not deductible losses; that to what extent deductions shall be allowed depends upon legislative grace; and that a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms. New Colonial Ice Co. v. Helvering, Commissioner, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348. But we

are not impressed by his argument that Section 23(e) of the Revenue Act of 1932, 26 U.S.C.A.Int.Rev.Acts, page 490, relied upon by the plaintiff, does not authorize the deduction, in some taxable year at least, of the loss involved in this case. That section reads as follows:

"(e) Losses by Individuals. Subject to the limitations provided in subsection (r) of this section, in the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

"(1) if incurred in trade or business; or

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or

"(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft. No loss shall be allowed as a deduction under this paragraph if at the time of the filing of the return such loss has been claimed as a deduction for estate tax purposes in the estate tax return."

 Although the breach of contract by the Trust Company started the train of events which ultimately resulted in the loss, yet the proximate cause of the loss in question was the insolvency of Banco Kentucky Company. There may be some merit to defendant's contention that the loss does not come within the provisions of Section 23(e) (1) of the Revenue Act of 1932 which authorizes the deduction if incurred in trade or business. See Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389; Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 208, 77 L.Ed. 397. Those cases held that the loss resulting from the sale of stock was not a loss resulting "from the operation of any trade or business regularly carried on by the taxpayer." The court emphasized the occasional or isolated nature of the sales involved. But the statutory provision invoked here does not require the trade or business to be "regularly carried on by the taxpayer." However, it is not necessary to decide that point, as it seems clear under the facts in this case that the loss claimed comes within the provisions of Section 23(e) (2) of the 1932 Act allowing a loss incurred in any transaction entered into for profit, though not connected with the trade or business of the taxpayer. It is true that in some cases a loss

sustained through the purchase of corporate stock which becomes worthless is not a deductible loss because under the particular facts involved in the case the transaction was not entered into for profit. Such was the case in Dresser v. United States, Ct.Cl., 55 F.2d 499, where the taxpayer was interested in the corporation whose stock he purchased, knew its affairs and poor financial condition and purchased a portion of an increase in capital stock more for the purpose of giving financial aid to the corporation than as an investment. But that is entirely different from a case where the taxpayer purchases the stock solely as an investment and the investment thereafter becomes worthless by reason of the corporate failure. Such a loss is certainly one incurred in a transaction entered into for profit within the meaning of the statute. See Heiner v. Tindle, 276 U.S. 582, 48 S. Ct. 326, 72 L.Ed. 714. Numerous decisions, as well as the Income Tax Regulations themselves, allow deductions for such losses. See Wesch v. Helburn, Collector, supra, and Brown v. Commissioner, supra, (6th Circuit) where investments in this same stock became worthless and were allowed as deductible losses. The Commissioner's contention on this point is refuted by his own action in redetermining the income tax liability for the year 1930 giving credit for the loss in the year 1930 instead of in 1933 as claimed by the taxpayer. We therefore consider the loss a deductible one leaving open for determination in what year it occurred.

 The defendant's theory of treating the loss which occurred in 1930 as an entirely separate and distinct transaction from the recovery later obtained from the Trust Company has some support from the decisions of the Supreme Court in United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120, and Burnet, Commissioner v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383. Those cases held that the fact that a taxpayer recovers a small part of a loss in a subsequent year does not invalidate the loss for the year taken when its deduction was based on the exercise of reasonable judgment from facts then known; and that such later recovery becomes a part of the gross income of the year of its receipt. See, also, Rhodes v. Commissioner, 6 Cir., 100 F.2d 966. But that rule is based upon the fact

that the taxpayer had no reasonable hope at the time of the loss of any eventual recoupment. Where the facts giving rise to the loss are at the same time the basis for a substantial recoupment, and reasonably recognized as such, it is only common sense to treat the loss taken as the difference between the value of the property lost or destroyed and the amount recovered. As a practical matter no loss is "taken" until the amount of the recovery has been determined, provided the initial loss and the recovery are parts of the same transaction. It was held in Dresser v. United States, supra, that a loss resulting to a taxpayer through ownership of stock in a corporation being liquidated was not deductible in the year 1919 where it appeared that a subsequent and final liquidating dividend uncertain in amount was reasonably anticipated even though delayed for several years. In that case the liquidation was substantially completed by December 31, 1919, and an estimate made of the final credit to be later received, which was not actually received until May, 1924. It was held that the net loss was a deductible item for the year 1924, and not for 1919 as claimed. If a loss results from the destruction of property which is accompanied by salvage, the net loss is not ascertained until the value of the salvage has been determined. Deductible losses must be evidenced by closed and completed transactions, fixed by identifiable events. Lucas, Commissioner v. American Code Company, 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010; Central Trust Co. v. Burnet, Commissioner, 60 App.D.C. 4, 45 F.2d 922; Ewing Thomas Converting Co. v. McCaughn, Collector, 3 Cir., 43 F.2d 503. In the present case it is a disregard of the admitted facts to say that Pirtle's Committee in 1931 considered the Banco Kentucky Company investment a total loss, or that it had no reasonable hope of a substantial recoupment from the Trust Company. It promptly repudiated the investment and demanded the return of the money so invested. It employed attorneys to enforce the claim. It refused to compromise its claim at any time for less than 76 cents on the dollar. The claim was never abandoned and the matter was never a closed or completed one until the settlement was reached in 1933. As was said in Rhodes v. Commissioner, (6th Circuit) supra [100 F.2d 969], "Common sense interpretation is the safest rule to follow in the administration of income tax laws." The common-sense interpretation of the present case is that the loss resulting from the unauthorized investment and the committee's recoupment therefor were merely separate phases of a single continuous transaction and that the matter was not a closed or completed transaction until the net loss was determined by the acceptance of the compromise payment in 1933. Accordingly, the court holds that the net loss claimed by the taxpayer was a proper deduction for the year 1933, when it finally became ascertainable and a closed transaction, and that the Commissioner's assessment for the year 1933 was invalid. It follows that the loss given by the Commissioner for the year 1930 is eliminated with resulting tax liability against the plaintiff for that year. Judgment should be entered for the net amount of the refund.