418

**GLENN, Collector of Internal Revenue, v.
LOUISVILLE TRUST CO.**

No. 8772.

Circuit Court of Appeals, Sixth Circuit.

Jan. 6, 1942.

Louise Foster, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and W. Croft Jennings, Sp. Assts. to Atty. Gen., and Eli H. Brown, III, of Louisville, Ky., on the brief), for appellant.

Allen P. Dodd and A. C. Van Winkle, both of Louisville, Ky., for appellee.

Before SIMONS, MARTIN, and Mc-ALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

The only problem posed by this appeal is whether a loss by John B. Pirtle, de-ceased, of Louisville, Kentucky, or his estate, through the unauthorized and improvident investment of his money in and the exchange of his securities for shares of Banco-Kentucky stock, by an agent or trustee was suffered in November, 1930, when Banco became insolvent and was placed in the hands of a receiver, or whether it was suffered in 1933 when Pirtle's representatives succeeded in securing a settlement from the agent. The suit below was for the recovery of an overpayment of taxes for 1933 after timely claim for refund, and, in a trial to the court without a jury, resulted in a judgment for the taxpayer, from which the Collector appeals.

There is no controversy over the essential facts. In 1926 Pirtle turned over his entire estate to the Louisville Trust Company for handling and management under a written agreement of which paragraph 5 is as follows:

"None of the securities or other estate held under this contract shall be sold, transferred or exchanged without the approval of first party, and all reinvestments shall be made by or at the special instance of first party, or in the absence of such request, to be invested as trust funds are by law invested under the statutes of the State of Kentucky."

Included in Pirtle's estate were 225 shares of stock in the Louisville Trust Company with a book value of $35,114; 57 additional shares of stock in that company with a book value of $9,975; 14,375 shares of stock of the National Bank of Kentucky and nine additional shares of the bank soon received by the Trust Company as a stock dividend. In 1927 all of this stock was exchanged for 296 shares of Trustees' Participating Certificates, issued pursuant to an agreement between the Louisville Trust Company and the National Bank of Kentucky, and representing the unified shares of both institutions. The nature of this agreement is fully detailed in Atherton v. Anderson, 6 Cir., 86 F.2d 518, 534–536, and in Brown v. Commissioner, 6 Cir., 94 F.2d 101, and repetition is unnecessary.

Subsequently the par value of the certificates was reduced from $100 to $10 each, and the Trust Company was in possession of 2,960 units when in 1929 Banco was organized with a capital of 2,000,000 shares of a par value of $10 each. On July 29th of that year the Trust Company,

on behalf of Pirtle, subscribed for 2,000 shares of Banco at the subscription price of $25 per share, and paid to Banco $50,000 of Pirtle's money. On the same day it exchanged the 2960 units represented by Participation Certificates standing in his name, for 5920 shares of Banco. The fair market value of the Participation Certificates at the time of the exchange was $47,895.25, and, with the $50,000 of cash, made the total investment of the Louisville Trust Company in Banco shares on behalf of Pirtle $97,895.25, though the stock was carried by the Trust Company on its books at a value of $84,017.00.

In November, 1930, Banco became insolvent and was placed in the hands of a receiver, pursuant to the laws of Kentucky. In the Western District of Kentucky (Wesch v. Helburn, D.C., 5 F.Supp. 581), and in this court, Brown v. Commissioner, supra, it has been adjudicated that in 1930 Banco stock became absolutely worthless.

On January 4, 1931, Pirtle was adjudged to be a person of unsound mind by the Jefferson Circuit Court of Louisville, and the Fidelity & Columbia Trust Company of Louisville was appointed as his committee and acted as such until his death in January, 1934, when the appellee qualified as his executor. When Fidelity took charge of Pirtle's estate and found itself in possession of 7920 shares of worthless Banco stock which the Louisville Trust Company had theretofore carried on its books as of the value of $84,017, and which it had bought without Pirtle's authorization, it promptly demanded of the Trust Company that it reimburse the Pirtle estate for the money it had paid out and the value of the securities it had surrendered for these shares on Pirtle's account. The Trust Company at first denied liability, but after extended negotiations a compromise was reached on January 7, 1933, as the result of which the Trust Company paid to Fidelity the sum of $75,000 in cash in full settlement of the claim against it on behalf of Pirtle's estate.

On March 14, 1934, Fidelity, still acting as committee for Pirtle, filed an income tax return on his behalf for the calendar year 1933, reporting no taxable income by reason of a deduction from gross income of a loss of $32,105.25, based upon the difference between its claim of $97,895.25 against the Louisville Trust Company and the $75,000 received in settlement of the

claim, after crediting itself with $7500 for attorney fees paid out in effecting the settlement. An error in computation, found by the District Court, reduced the permissible deduction to $30,395.25. The Commissioner disallowed any deduction for 1933 and upon a reexamination of both the 1930 and 1933 returns of the taxpayer, determined that the 7920 shares of Banco acquired by the Louisville Trust Company as agent for Pirtle, had become worthless and deductible for federal income tax purposes only in 1930. He allowed the loss on account of the worthlessness of the stock for that year, although previously he had disallowed a deduction for part of it in the taxpayer's 1930 return. The result was the finding of an overpayment of $2,445.12 in the taxpayer's 1930 taxes. At the same time the Commissioner asserted a deficiency in the taxpayer's return for 1933 due to its failure to return as income the $75,000 received from the Trust Company in settlement of the claim after crediting expense. The result was an assessment, after crediting the overpayment for 1930, in the sum of $20,738.71, which, with interest, was paid by the taxpayer on July 28, 1936. The judgment for refund was in this sum with interest until paid.

The argument upon which the Collector seeks reversal is that the court erred in treating the Trust Company's investment of Pirtle's funds and securities in Banco shares, and the recoupment from the Trust Company on behalf of Pirtle's estate as phases of a single transaction closed and completed in 1933, the date of the compromise settlement. He insists that they are separate and distinct transactions. The Banco stock having become worthless in 1930, he urges that the loss was deductible in that year since the possibility of recovery was then remote and contingent. The controversy, he insists, is concerned with two separate and distinct rights of action, one, a claim arising from the improper acquisition of stock by an agent, and the other residing in the fact of ownership of the stock itself, and these transactions have no relationship to each other, either in time or character. His position is that the loss occasioned by the ownership of stock should have been taken in 1930, while the gain derived as damages for breach of the contract of agency should be included as income in 1933 when received. As a further compelling reason he insists that the prospect of recovery in

1930 was problematical and conjectural and that no claim had been advanced against the Trust Company in that year.

The Collector's contention overlooks the actualities of the transaction upon which the Commissioner's assertion of deficiency was based. Pirtle never bought any Banco stock; he neither authorized nor confirmed the purchase of it by the Louisville Trust Company. It is conceded that the purchase as made was in breach of the provisions of the agreement of 1926, and it is not claimed that either the Participation Certificates or Banco shares were securities such as, by the laws of Kentucky, constitute an allowable investment for trust funds. The Louisville Trust Company, when it exchanged Pirtle's stock for Participation Certificates, when it exchanged such certificates for Banco shares, and when it paid Pirtle's money for such shares, became responsible to him for any loss that he might suffer, and in this connection it seems to us immaterial whether we consider the Louisville Trust Company to have been a trustee for Pirtle or merely his agent. The loss primarily was the result of a violation of the agreement by the Trust Company; however, in final analysis it may have been attributable to the insolvency of Banco. Pirtle's right of action against the Trust Company for breach of trust, or of contract, arose not in 1930 when Banco failed, but in 1929 when his money was paid out and his securities were surrendered for Banco shares. He could then have asserted a claim against the Trust Company and sued upon it. The extent of his loss was not determined until, as a result of negotiation and threat of suit, its amount had been ascertained. That was in 1933.

Whether we say that the original investment by the Trust Company and the recovery against it are but related phases of a single transaction, which for tax purposes may not be disassociated since the question whether losses are sustained in a given year calls for a practical and not a legal test, Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010, or whether we say that Pirtle never owned Banco shares since his agent or trustee was never authorized to purchase them on his behalf and he had the right to claim from it a return of his money and securities, the result is the same. Pirtle's right of action flowed from the dereliction of the Trust Company and not from the failure of Banco. The settlement was in full recognition thereof. Viewing the problem realistically, as we are enjoined to do by authorities so numerous that citation becomes superfluous, we conclude that upon whatever theory Pirtle or his estate suffered a loss through the unauthorized investment of his funds, the loss was suffered in 1933 when the extent of it first was ascertained.

The judgment of the District Court is affirmed.