Franklin R. Chesley v. Commissioner.
Chesley v. Commissioner
Docket No. 7296.
United States Tax Court
1946 Tax Ct. Memo LEXIS 29; 5 T.C.M. (CCH) 995; T.C.M. (RIA) 46271; November 27, 1946
*29 On the facts, held, that petitioner through the device of a sale in the taxable year 1941, was not entitled to deduct a loss on the shares of the Petroleum Rights Corporation which became worthless sometime prior to such taxable year. Franklin R. Chesley, pro se. Arnold R. Cutler, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves income tax liability for the calendar year 1941 in the amount of $3,066.43. The sole contested issue is whether respondent erred in denying petitioner a long-term capital loss on the sale, in 1941, of certain shares of the capital stock of the Petroleum Rights Corporation. The case was submitted on oral testimony, documents and exhibits. Findings of Fact Petitioner is an individual, residing at Portland, Maine. His 1941 income tax return, on a cash receipts and disbursements basis, was filed with the collector of internal revenue for the district of Maine. In October 1929, petitioner purchased as a unit 250 [1] shares of preferred and 400 shares of the common stock of Petroleum Rights Corporation for the sum of $20,000. Petitioner, on December 5, 1941, sold these shares *30 for the sum of $5. Petitioner paid the transfer tax of $47.50 in connection with the sale. In the 1941 tax return the petitioner claimed a long-term capital loss of 50 per centum of the difference between the cost price of $20,000 and the sale price of $5. The respondent denied any loss. The respondent disallowed the loss on the ground that such stock became worthless in the year 1936. The Petroleum Rights Corporation, a Delaware corporation, was organized in 1923. It was engaged in the purchasing of royalties on oil production properties. It was authorized to issue preferred stock of $100 par and common of no par value. The Federal income tax returns of Petroleum Rights Corporation, through the period 1932 to 1935, the last year in which it filed any income tax returns, disclose it operated at a loss in each of those years. Its balance sheet on its 1935 return shows total assets of $122,404.13. The principal assets were listed as: stock of other corporations, $91,112; oil royalties and leases, $21,359.28; and treasury stock, $9,345.29, aggregating $121,816.57. Its liabilities, exclusive *31 of capital stock, aggregated $57,290.34. Sometime prior to August 1936, its stocks of other corporations had been pledged with the Chase National Bank as collateral to loans and had been sold by the bank for $5,000, which was applied to those loans. Under date of August 22, 1936, the Petroleum Rights Corporation entered into an agreement with its two largest creditors. It transferred "absolute title" to all its royalty assets to Arthur B. Spinning as nominee of the Chase National Bank of New York City, to be dealt with as provided in that agreement. The provisions material here read as follows: WHEREAS. The Chase National Bank of the City of New York (hereinafter called the "Chase Bank") has obtained a judgment in the sum of $34,716.90 against Petroleum Rights Corporation; and WHEREAS, The Bemal Co., Inc., is now a creditor of Petroleum Rights Corporation in the principal sum of $17,214.00, with interest thereon from May 27, 1936, which amount is now past due, and in connection with which The Bemal Co., Inc., has commenced or is about to commence suit to enforce payment; and WHEREAS, Petroleum Rights Corporation hereby represents that it has no creditors other than the Chase *32 Bank, The Bemal Co., Inc., J. Edward Jones and United States Corporation in the sum of $175.00, State of New York in the sum of $25.00, State of Delaware in the sum of $300.00 and Hyman I. Fischbach in the sum of $225.00; that the schedule annexed hereto itemizes all the royalty assets owned by Petroleum Rights Corporation on December 31, 1935, and any royalty assets subsequently acquired; that all of said royalty assets so itemized are now owned by said Corporation; and WHEREAS, the Chase Bank has a motion pending in the Supreme Court of the State of New York, County of New York, for the appointment of a receiver for Petroleum Rights Corporation, in connection with which motion The Bemal Co., Inc., has asked for leave to intervene and to submit papers so as to have the receivership applied for extended to it. The Bemal Co., Inc., as soon as it obtains judgment; and WHEREAS, the appointment of a receiver might result in substantial expense and might tend to decrease the amounts of money to be payable to the Chase Bank and The Bemal Co., Inc., as creditors. NOW, THEREFORE, in consideration of the mutual promises exchanged between the parties hereto; in consideration of the sum *33 of One ($1.00) Dollar by each of the parties hereto to each of the others in hand paid, the receipt of which is hereby acknowledged; in consideration of the withdrawal of the motion for the appointment of a receiver heretofore made by the Chase Bank; and in consideration of the efforts and good offices used by The Bemal Co., Inc., to procure an assignment of certain royalty assets by Petroleum Rights Corporation, as is hereinafter more fully set out, the parties hereto agree as follows: 1. Arthur B. Spinning, as nominee of The Chase National Bank of the City of New York, shall have absolute title to certain royalty assets, a list of which is annexed hereto, simultaneously conveyed herewith to him by Petroleum Rights Corporation with full power to sell at any time all or any part of said assets in the City of New York or elsewhere, at private or public sale, and generally to do all things and to have all powers which an owner of property may have with respect thereto provided only that: (a) All income from said royalty assets or proceeds of the sale or sales thereof, less the expense of transfer or other expenses in connection therewith and after paying the sum of $725.00 to said *34 other creditors of Petroleum Rights Corporation shall be divided between the Chase Bank and The Bemal Co., Inc., in the proportion of $34,716.90 to $17,214, respectively, irrespective of any change in the indebtedness of Petroleum Rights Corporation to the Chase Bank or to The Bemal Co., Inc. The disbursements shall be made no later than ten days after the receipt of either income from or proceeds of the sale of said royalty assets. (b) The Bemal Co., Inc., will be given fifteen days' written notice of the sale (and of the terms thereof, if known) of all or any part of said assets. 2. Said sums so received by the Chase Bank and The Bemal Co., Inc., shall be respectively applied by said corporations upon the respective indebtedness of Petroleum Rights Corporation to said corporations until such indebtedness has been paid. The proceeds, however, of any collateral now held by the Chase Bank or The Bemal Co., Inc., shall be first applied on said respective indebtedness and no right of subrogation shall exist because of such application. Any surplus from said royalty assets shall exclusively enure to the benefit of the Chase Bank and The Bemal Co., Inc., in the respective proportion *35 aforesaid. * * *
4. Petroleum Rights Corporation agrees that the turning over of the royalty assets to the nominee of the Chase Bank under this agreement is without prejudice to any and all rights of the judgment creditor, the Chase Bank and the creditor, The Bemal Co., Inc., to pursue at any time any other remedy or remedies they may desire in connection with the judgment and/or indebtedness of the respective parties, save that the application of the Chase Bank now pending for the appointment of a receiver of Petroleum Rights Corporation will be withdrawn. The acceptance of title to the royalty assets by the nominee of the Chase Bank under the terms of this agreement is not to be construed as a waiver either by the Chase Bank or by The Bemal Co., Inc., of any of their respective rights, nor shall it be construed as a standstill agreement, nor shall it be construed as an agreement by the Chase Bank or The Bemal Co., Inc., to accept the said royalty assets and the income derived therefrom or the sales price realized therefrom in lieu of the liability of Petroleum Rights Corporation to pay the said judgment to the Chase Bank and the indebtedness to The Bemal Co., Inc., save to *36 the extent such liability of Petroleum Rights Corporation is thereby reduced; nor shall it affect in any way the rights or remedies of The Bemal Co., Inc., and the Chase Bank against J. Edward Jones. These royalty assets so transferred were valued on the 1935 balance sheet of the Petroleum Rights Corporation at $21,359.28. The total liabilities exclusive of capital stock, as stated in the agreement of August 22, 1936, aggregated $52,655.90, with an undisclosed amount of accrued interest due. The Petroleum Rights Corporation since 1936 held no stockholders' meetings and only one meeting of its board of directors, which was called for the purpose of taking action in respect to the foresaid agreement of August 22, 1936. The charter of the corporation was declared inoperative and void April 1, 1939, by the State of Delaware, for nonpayment of its annual franchise taxes for two consecutive years. On November 15, 1943, the Chase National Bank sold, assigned, transferred and set over to the Sugar Field Oil Company all "its right, title and interest" in and to the royalty assets and the income or proceeds received therefrom under the August 22, 1936 agreement, without warranty and without *37 recourse. The preferred and common shares of the Petroleum Rights Corporation became worthless prior to the taxable year 1941, and petitioner did not establish any loss by a sale thereof in December 1941 for $5. Opinion Ordinarily the sale of shares of stock in an arm's length transaction establishes a capital loss under the taxing statutes. A wellrecognized exception to this general rule is where the stock has become worthless prior to the sale. DeLoss v. Commissioner, 28 Fed. (2d) 803; certiorari denied, 279 U.S. 840; Schmidlapp v. Commissioner, 96 Fed. (2d) 680. The record here leaves no doubt in our mind that this controversy falls squarely within the exception. Considerable testimony, as well as a large section of the respective briefs, is devoted to the argument as to whether the contract of August 22, 1936, was a pledge agreement or an absolute sale of assets. Its precise character is not decisive. Whatever its proper characterization, we feel certain no one would seriously contend that the execution of such a contract was not an act of utter insolvency. As we view it, the important thing to determine is whether, after the execution *38 of that agreement, there remained any equity in the corporation's shares. The agreement provided for the transfer of the last asset of value to the corporation's creditors. The assets had a book value in 1935 of $21,359.28. The debts were in excess of $52,000. In fact, the agreement shows that it was the inadequacy of the assets to meet the indebtedness that gave purpose to it. The creditors believed they would realize more money if the expense of a receivership, which had been applied for, were avoided. To recognize the existence of any equity in the corporation's shares, after the execution of such agreement, is to ignore the realities. The test of worthlessness is a practical one. Lucas v. American Code Co., Inc., 280 U.S. 445, 449. The corporation without assets could not and did not attempt to carry on its corporate functions. The evidence, we think, permits of no other alternative than to conclude that the shares of the Petroleum Rights Corporation became worthless some time prior to the taxable year 1941. The revenue act requires the loss to be taken in the year the stock becomes worthless. [2] One may not postpone taking the loss to a later time by the device of *39 a sale. Schmidlapp v. Commissioner, supra; DeLoss v. Commissioner, supra.
Enter: Decision will be entered for the respondent. Footnotes
1. On the trial and on brief petitioner claims the number of preferred shares was 200.↩
2. I.R.C., sec. 23 (g) (2)↩.