COUNTY FIRE INSURANCE COMPANY OF PHILADELPHIA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GREAT AMERICAN INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

AMERICAN ALLIANCE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

UNION INSURANCE SOCIETY OF CANTON, LIMITED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 100636, 100637, 100638, 100740.    Promulgated October 24, 1941.

*Pressly R. Baldridge, Esq.,* and *William P. Nottingham, Esq.,* for the petitioners.

*B. M. Brodsky, Esq.,* for the respondent.

484

OPINION.

VAN FOSSAN: The question for decision is whether petitioners are entitled to deduct from gross income for 1935 the amounts paid into court during that year after final settlement of the rate litigation, or whether the petitioners should have accrued the liability and taken the deduction at some time prior thereto.

Petitioners contend that the excess amounts collected from the unlocated policyholders which were paid into court during 1935 were deductible in that year either as return premiums under section 204 (b) (5) of the Revenue Act of 1934, or as losses incurred under section 204 (b) (6). It is the further contention of petitioners that if the amounts be considered as return premiums they are deductible only when paid, and if they be considered as losses they did not accrue prior to 1935, since the liability was in dispute and was not finally determined until that year.

The method of accounting to be followed by an insurance company, other than life or mutual, in determining its gross income is precisely set out in section 204 of the Revenue Act of 1934, the applicable portions of which are as follows:

(b) DEFINITION OF INCOME, ETC.—In the case of an insurance company subject to the tax imposed by this section—

(1) GROSS INCOME.—"Gross income" means the sum of (A) the combined gross amount earned during the taxable year, from investment income and from underwriting income as provided in this subsection, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners * * *;

(2) NET INCOME.—"Net income" means the gross income as defined in paragraph (1) of this subsection less the deductions allowed by subsection (c) of this section;

(3) INVESTMENT INCOME.—"Investment income" means the gross amount of income earned during the taxable year from interest, dividends, and rents, computed as follows:

To all interest, dividends and rents received during the taxable year, add interest, dividends and rents due and accrued at the end of the taxable year, and deduct all interest, dividends and rents due and accrued at the end of the preceding taxable year;

(4) UNDERWRITING INCOME.—"Underwriting income" means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred;

(5) PREMIUMS EARNED.—"Premiums earned on insurance contracts during the taxable year" means an amount computed as follows:

From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance. To the result so obtained add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year;

(6) LOSSES INCURRED.—"Losses incurred" means losses incurred during the taxable year on insurance contracts, computed as follows:

To losses paid during the taxable year, add salvage and reinsurance recoverable outstanding at the end of the preceding taxable year, and deduct salvage and reinsurance recoverable outstanding at the end of the taxable year. To the result so obtained add all unpaid losses outstanding at the end of the taxable year and deduct unpaid losses outstanding at the end of the preceding taxable year;

\* \* \* \* \* \* \*

Deductions being a matter of legislative grace, the problem which confronts this Board is one of determining where the deductions claimed by petitioners fit into the accounting system prescribed by the statute.

Subsection (6) above furnishes a complete answer to the alternative contention that the items in question are deductible as "losses." It is obvious that the "losses" covered thereby are insurance losses as commonly conceived, computed as indicated. The provision is not a "catch-all" covering corporate losses in the sense that the word "loss" is used in section 23 and elsewhere in the revenue act. It would require a distortion of meaning to comprehend the deductions claimed by petitioners in the category of losses.

Thus it is that if petitioners are to prevail they must establish that the payments into the court are to be catalogued as "return premiums." No other provision of the statute that might be applied is suggested.

In *Monarch Life Insurance Co.*, 38 B. T. A. 801, we had occasion

to consider the meaning of the term "return premiums" as used in section 204 of the 1932 Act. We there held that the term did not include dividends declared by the petitioner, an insurance company, other than life or mutual, on participating life insurance policies, and paid or credited for the benefit of policyholders under the various options granted in the policies. Although the problems are by no means identical, we believe certain observations made in the *Monarch* case are helpful here. We there noted that the term "return premiums" appears in the section defining and designed to arrive at "premiums earned." After observing that the item is permitted as a deduction from gross premiums received, we stated, "it may therefore be assumed to be limited to premiums considered 'unearned'."

The payments into the court were amounts due to unlocated policyholders as a result of the reduction of 10 percent in rates. The amounts had been collected as premiums. The order fixed the amount that could be charged for insurance and, therefore, the amount that could legally be earned. The excess collected was, therefore, unearned.

It is stipulated that these amounts had been included in income of the petitioners. It follows that the subsequent change in character from earned income to unearned income should be reflected in the petitioners' tax accounting.

Respondent does not contend that petitioners are not entitled to a deduction in principle, but maintains they should have accrued the item and taken deduction in some year prior to 1935. Although the rate reduction order became final in 1930 and petitioner proceeded to comply therewith by making refunds to all policyholders on demand, it is stipulated that petitioners did not know at that time whether demand would ever be made for the excess premiums by the unlocated policyholders. The same condition apparently obtained until 1935. There was no certainty the companies would ever have to pay the amounts in question. Except for the order requiring payment of such amounts into court, petitioners would never have been in position to claim the present deductions. The validity and enforcement of any such order was in litigation until the final order of the court, December 7, 1935. At that date the liability of the companies to pay into court became fixed. Likewise became fixed the amounts due to unlocated policyholders. Our question arises not primarily from the rate reduction order, but from the order requiring payment into court of the amounts due the unlocated policyholders. It was when this order became final and payment into court occurred that the petitioners were in position to accrue the amounts due and claim the deductions here in question. *Lucas* v. *American Code Co.*, 280 U. S. 445. Since the amounts were paid in the same year the liability became

fixed, it is unnecessary to discuss the question of whether "return premiums" may be deducted in any year other than that in which paid.

In our opinion respondent erred in disallowing the deductions claimed.

Reviewed by the Board.

> *Decisions will be entered for petitioners in Docket Nos. 100636, 100637, 100638. Decision will be entered under Rule 50 in Docket No. 100740.*

KERN concurs only in the result.