## COMMISSIONER OF INTERNAL REVENUE v. AMERICAN LIBERTY OIL CO.

## AMERICAN LIBERTY OIL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10108.

Circuit Court of Appeals, Fifth Circuit.

April 3, 1942.

Robert N. Anderson, J. Louis Monarch, and Warren F. Wattles, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Claude R. Marshall, Sp. Atty., Bureau of Internal

Revenue, both of Washington, D. C., for Commissioner of Internal Revenue.

John B. King, of Dallas, Tex., for American Liberty Oil Co.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

The Board of Tax Appeals determined an income tax deficiency of $49,787.45 against American Liberty Oil Company for the year 1934. By petitions for review both the Commissioner and the taxpayer contest portions of the decision of the Board. The Board's findings and opinion are reported, American Liberty Oil Company v. Commissioner, 43 B.T.A. 76.

### The Commissioner's Petition.

In 1934 Wofford Production Company, a wholly owned subsidiary of American Liberty Oil Company, transferred to the parent corporation a valuable operating oil lease for a recited consideration of $150,-000.00. The lease had a fair market value of $260,000.00 and was the only operating asset of the Wofford Company. The transaction was set up on the books, and after deduction of certain amounts the balance due from American Liberty to Wofford was $146,825.90. After the lease transfer Wofford acquired no other assets, and conducted no substantial business operations. Its stock was not cancelled, however, and it has at all times maintained its corporate existence, and its franchise and other taxes have been paid by American Liberty and the amounts so paid charged on the books to Wofford. The taxpayer conceded and the Board found that by transfer of the lease from Wofford to the parent corporation for less than its fair market value, American Liberty realized a profit of $110,-000.00. This amount was taken into account in recomputing the taxpayer's income tax liability for the year in question.

Also in 1934 the Southern Liberty Oil Company, another wholly owned subsidiary, transferred to American Liberty all of its producing properties for a recited consideration of $177,011.93. These properties had an admitted fair market value of $374,-970.81. The Southern Company was not dissolved, and has at all times maintained its corporate existence, and in the years following 1934 it has paid its franchise taxes and has filed income and capital stock returns. The Board found that American Liberty realized a taxable gain of $197,-958.88 from the Southern transaction, but held that only $184,505.05 of this amount could be included in the taxpayer's income for recomputation purposes.

The Commissioner contends here as he did before the Board that the transactions between American Liberty and Wofford and Southern effected distributions in liquidation or in partial liquidation of these wholly owned subsidiaries, and that the taxpayer's gains on the transactions should be computed in accordance with the provisions of Section 115(c) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 703, which section deals with distributions in liquidation or partial liquidation of corporations. The contention is without merit. Both the Wofford and Southern corporations are still in existence, and there is no showing or finding that there was a liquidation or partial liquidation of these companies. The record does not compel such a finding, and the decision of the Board on this point will not be disturbed.

The Commissioner further contends that the Board erred in holding that only $184,505.05 of the $197,958.88 gain on the Southern Liberty transaction might be taken into account in recomputing American Liberty's tax liability. The Commissioner in urging the liquidation theory asserted a profit of $184,505.05, and the Board, although repudiating the liquidation theory, limited the amount of gain to be taken into account in recomputation to the liquidation figure. This was error and should have been corrected by the Board when the mistake was called to its attention by a motion of the Commissioner filed within thirty days after promulgation of the Board's opinion. In the oral argument before this court taxpayer's counsel conceded this point. The full amount of the gain, $197,958.88, should have been taken into account, and the case will be remanded to the Board on this point so that the correct recomputation may be made.

### The Taxpayer's Petition.

In 1934 American Liberty Oil Company sold certain leasehold interests in oil and gas producing properties to Atlantic Oil Producing Company, receiving $1,600,-000.00 in cash and reserving to itself 4,-400,000 barrels of oil in place, when, as, and if produced. In determining American

Liberty's gain on the transaction the Board allocated the cost of the leaseholds in proportion to the respective values of the oil interest sold and the oil interest retained. The taxpayer contends that it was entitled to full recovery of the cost of the leaseholds, and that no part of such cost should have been allocated to the reserved interest in the oil in place. It further contends that if allocation was proper, the allocation should have been made upon a barrel basis and not in proportion to the value of the respective interests. Taxpayer's contentions are without merit. The method of allocation used by the Board resulted in a fair and equitable apportionment of the leasehold costs between the interest sold and the interest retained by the taxpayer. The allocation was proper and was in full accord with this court's opinions in Columbia Oil & Gas Co. v. Commissioner, 5 Cir., 118 F.2d 459; and Commissioner v. Roeser & Pendleton, 5 Cir., 118 F.2d 462.

■ On June 1, 1931, Golding-Murchison Company agreed to writing to sell and deliver to Tyler Pipe Line Company such amounts of oil produced from the Golding-Murchison properties as Tyler might wish to purchase during the following five years. American Liberty Oil Company acquired the Golding-Murchison assets in 1932, and assumed the Tyler contract. American Liberty's sale of oil and gas leases to Atlantic in 1934 resulted in the breach of the written but unrecorded Tyler contract. A controversy arose between the officers of American Liberty and Tyler Company as to what should be done about the contract. Negotiations between the two companies continued until April 1, 1936, when an agreement was reached, and American Liberty was released from all liability for breach of the contract upon tendering to Tyler its promissory note for $120,000.00, payable in six months. The payment of the $120,000.00 was set up on American Liberty's books under an account styled "Sale of Leases—Atlantic", and on December 31, 1936, the item was transferred to an account styled "Earned Surplus—Unappropriated 1934". Taxpayer operated on an accrual basis of accounting, but until 1936 it accrued nothing on its books to provide for payment of the controverted liability. In 1934 the liability for breach of the contract was at most a contingent one, and the amount was not fixed and settlement made until 1936. The Board properly held that the amount agreed upon and paid in 1936 as damages for the breach of the contract was not deductible from the taxpayer's 1934 income. Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010; Commissioner v. Southeastern Express Co., 5 Cir., 56 F.2d 600; J. N. Pharr & Sons v. Commissioner, 5 Cir., 56 F.2d 832.

The case is remanded to the Board with direction to recompute the tax after including the full amount of the gain on the Southern Liberty transaction and correct its decision accordingly. As corrected the decision of the Board is affirmed.